149 So. 458

## Succession of SCIACCALUGA.

## No. 31948.

May 29, 1933.

Rehearing Denied July 7, 1933.

Arthur B. Leopold and Arthur Landry, both of New Orleans, for appellant.

Friedrichs, Connolly & Simoneaux, of New Orleans, for appellee.

ODOM, Justice.

The only question involved in this case is whether Mrs. Mary Bernard Sciaccaluga is.

entitled to receive $1,000 from the succession of her deceased husband, Angelo Sebastian Sciaccaluga, as dower under article 3252 of the Civil Code. That she is the widow of the deceased and in necessitous circumstances is not disputed. But the executrix and legatees under the will contest her claim on two grounds, first, because she abandoned her husband some forty years previous to his death, and lived separate and apart from him from the date of the abandonment until his death; and, second, on the ground that she is estopped from making the claim on account of certain judicial proceedings which she instituted in connection with her deceased husband's succession.

■ 1. In support of their contention that Mrs. Sciaccaluga is not entitled to the widow's dower as provided in article 3252 of the Civil Code, on the ground that she abandoned her husband many years previous to his death and continued to live apart from him, the executrix and the legatees under his will cite the following cases: Armstrong v. Steeber, 3 La. Ann. 713; Dunbar v. Heirs of Dunbar, 5 La. Ann. 159; Pickens v. Gillam, 43 La. Ann. 350, 8 So. 928; Succession of Justus, 44 La. Ann. 721, 11 So. 95; Succession of Rogge, 50 La. Ann. 1220, 23 So. 933; Richard v. Lazard, 108 La. 540, 32 So. 559; Succession of Kunemann, 115 La. 604, 39 So. 702.

We shall not review these cases. It suffices to say that they hold that it was never intended that the right granted a widow in necessitous circumstances to claim what is called the marital portion or the fourth of the husband's succession under certain conditions as provided in article 2382 of the Civil Code or the $1,000 dower as provided in article 3252 of the Civil Code should be exercised by an unfaithful wife who voluntarily and for reasons of her own abandoned her husband and thereafter lived apart from him.

But the doctrine announced in these cases was repudiated in later decisions, and is no longer in force.

In Veillon v. LaFleur's Estate, 162 La. 214, 110 So. 326, 329, it was held on rehearing that:

"Under the plain provisions of the Code no condition whatever is attached to the right of the necessitous husband or wife to claim the marital portion or of the necessitous wife to claim the so-called widow's homestead," and

"It [Article 3252 of the Code] attaches no qualifications and imposes no conditions upon the necessitous wife who seeks to avail herself of its beneficial provisions. It makes no distinction between the faithful wife and the unfaithful wife."

The other later cases are: In re Coreil's Estate, 145 La. 788, 83 So. 13; Succession of Guillon, 150 La. 587, 91 So. 53, and Succession of Hagan, 150 La. 934, 91 So. 303.

In the Veillon Case, supra, all the authorities pro and con are cited and considered, and the conclusion there reached was deliberate. We now expressly reaffirm the doctrine therein announced.

■ The Veillon Case was decided in 1926. The Legislature has convened in regular session three times since then without making any change in the articles of the Code. As it has not seen fit to change the law as it was

interpreted in that case, we must assume that it is not disposed to do so.

■ 2. The plea of estoppel is based upon the theory that the widow has accepted the succession of her deceased husband and the community which existed between them. It is contended that she has done so expressly and unqualifiedly by "assuming the quality of widow in community" and by claiming the marital portion.

We find no merit in this plea. Angelo Sebastian Sciaccaluga died January 14, 1930, leaving a last will by which, after making a special bequest of $500 to Marie Fitzgerald, he named his sister Louise Mary and his brother Joseph John Sciaccaluga his universal legatees. His sister, who was appointed executrix without bond, had the will probated and qualified. The inventory which was made listed practically all of the assets of the deceased as his separate property. It was presented to the widow for her approval, which was refused. On April 21, 1930, the widow filed a formal motion to set aside the inventory and to have another made, on the ground that some of the assets listed as the separate property of the deceased were in fact community property. This motion was dismissed by the court for reasons not necessary to mention. On June 6 she filed a petition in which she alleged that the inventory filed by the executrix was erroneous, for the reason that certain described property was listed as the separate property of the deceased, whereas it. in fact belonged to the community which existed between her and her deceased husband. She prayed for judgment against the executrix and the heirs de-

creeing that said property belonged to the community.

On July 8 she filed a similar pleading and apparently for the same purpose. These pleadings were all filed by her as "widow in community" of the deceased. There was judgment in her favor decreeing that certain portions of the property which she described belonged to the community and ordering that the same be inventoried as such.

On July 7, 1931, the attorneys for the widow, referring to her as "surviving spouse of Angelo Sebastian Sciaccaluga," filed a rule against the executrix asking that she show cause why she should not file a final account. In this rule the attorneys used the following language: "And movers represent that the wife of deceased, who is entitled to the marital fourth and has an interest in the community of the estate of the deceased." The rule was made absolute, and the executrix was ordered to file her account. She did so; the account showing that both the separate estate and the community were insolvent. Whereupon the widow filed her claim for $1,000 under article 3252 of the Code.

The contention made by counsel for the executrix and the heirs is that these proceedings were all petitory actions "which could not have been maintained unless she were pursuing rights of ownership in and to said property by virtue of her rights as surviving widow in community and without the intention of accepting the community which existed between her and her deceased husband."

In other words, it is contended that, by appearing in court as the widow in community of the deceased, and asking that steps be tak-

en to correct the inventory which had been filed by the executrix and asking that the executrix file her final account, the widow has unqualifiedly accepted the community.

Counsel have misunderstood the purpose which the widow had in filing these pleadings. She did not intend to, and did not in fact, accept the community. The pleadings do not manifest such intent. What the widow was endeavoring to do, as shown by the pleadings, was to have the executrix make an inventory showing what property belonged to the community and its value, and finally to file an account listing the debts due, in order that she might determine whether to accept or renounce. She had to appear in court as the widow in community of the deceased; otherwise her pleadings would have disclosed no interest.

Article 2413 of the Civil Code provides that:

"The surviving wife, who wishes to preserve the power of renouncing the community of gains, must make an inventory within the delays and with the formalities prescribed for the beneficiary heir."

It is suggested that she should have had a separate inventory made with reservation of her right to renounce. That was not necessary in this case, because, immediately after the death of the deceased, his will was probated, and the executrix took possession of all the property for the special and universal legatees. The property immediately went into the hands of those to whom it was bequeathed. It was the duty of the executrix to make a correct inventory and to file an account. A proper inventory and account

filed by the executrix subserve the same purpose as a guide to the widow in order that she might determine whether to accept or renounce the community as would one made by her. All that the widow did was to take such steps as were necessary in order to compel the executrix to file a correct inventory and final account. When the account was filed showing that the succession was insolvent, the widow made her claim.

The trial judge overruled the pleas of estoppel, and held that the widow was entitled to the $1,000 dower, the same to be paid by preference over all claims except costs of administration, selling the property, vendor's liens, and mortgages.

The judgment is correct and is affirmed.

OVERTON, J., dissents.