PONDER, Justice.
 

 This is an action in jactitation or slander .of title.
 

 The St. Martin Land Company, the plaintiff, conveyed to Emerson C. Russell a l'/16 royalty in all oil to be produced and saved from a large tract of land, owned by the plaintiff, lying in the Parish of St. Martin. The defendants are the assignees of the 1/16 royalty. Each owns a fractional interest of the 1/16 royalty. The plaintiff is seeking in this suit to have the defendants either disclaim any title to the 1/16 royalty or assert their rights by suit. The plaintiff also seeks damages in the amount of $5,-000.00. The suit is based on the ground that more than ten years have elapsed since the plaintiff conveyed the 1/16 royalty interest to Emerson C. Russell on April 26, 1928 and that, by reason of prescription liberandi cause of more than ten years, the deed conveying such interest is void and of no effect. There was judgment in the lower court rejecting the plaintiff’s demands and recognizing the defendants to be the owners of the royalty interest in various fractional parts. The plaintiff has appealed.
 

 It appears that Emerson C. Russell and W. H. Cocke entered into an agreement with the plaintiff for the purchase of the 1/16 royalty involved herein, but, as the purchase price was too large for them to handle, they entered into an agreement with Hogg Brothers of Houston, Texas, who furnished the funds to pay the consideration of the sale with the understanding that Russell and Cocke could purchase whatever interest they later desired by reimbursing Hogg Brothers the cost of such portions. The royalty deed was placed in the name
 
 *307
 
 of Emerson C. Russell. In an instrument dated February 24, 1928, Russell acknowledged that Iiogg Brothers owned the royalty interest conveyed to him by the plaintiff. On March 6, thereafter, Russell formally assigned the 1/16 royalty interest to, Hogg Brothers. The assignment was recorded on May 18, 1929 in the conveyance records of St. Martin Parish.
 

 There was an agreement between Hogg Brothers and Russell and Cocke whereby a portion of the royalty was set aside in order that Russell and Cocke might purchase it. This portion of the royalty interest was subsequently assigned to Pinckney and Picton, two of the defendants herein, by consent of the parties. The original agreement was amended on June 19, 1928 whereby Hogg Brothers agreed that they would transfer to Russell and Cocke 22%% of the 1/16 royalty interest upon payment of their note at maturity, February 23, 1929, of $6,834.38, held by Hogg Brothers. Emerson C. Russell died on November 18, 1928 at his residence in Houston, Texas, before the transaction was consummated. His succession was opened in Texas and ancillary proceedings were instituted in Calcasieu Parish, March 23, 1929. Nat U. Collier and Franklin J. Russell were appointed co-executors in conformity with the terms of Russell’s will and recognized as such in the ancillary proceedings in Calcasieu Parish. Cocke, some time after Russell’s death, with the consent of the executors, entered intO'an agreement with Hogg■ Brothers to separate the contract and the indebtedness into two equal parts in order that Cocke might acquire his interest in the royalty independently of the Russell estate. Eleven and one-fourth per cent interest in the 1/16 royalty was assigned by Hogg Brothers to Cocke on September 9, 1929. On account of the estate being heavily involved and the lack of funds, the executors were unable to pay the indebtedness of the estate and acquire
 
 the
 
 other 11%% interest for the estate. However, an agreement was reached between the executors and Hogg Brothers some time in March, 1929, wherein one-half of the 11%% interest of the 1/16 royalty would be transferred to the executors, in their capacity as such, and the indebtedness of the estate cancelled. It appears that this adjustment was reached for the mutual benefit of all the parties. On December 27, 1929, pursuant thereto, Hogg Brothers assigned to the executors, “in their capacity as executors of the estate of Emerson C. Russell * * * for themselves as said executors, their successors and assigns,” the 5%% of the 1/16 royalty (which is one-half of the 11%'%) for a recited consideration of $10.00 and other valuable consideration. Among the inventories taken in the succession of Russell was one taken in St. Martin Parish. This inventory is dated April 9, 1929 and filed on April 12, 1929, and we find that the 5%% of the 1/16 royalty was listed therein as the property of Russellls estate. No further steps were taken in the succession until September 5, ,1939,
 
 *308
 
 more than ten years from the date Emerson C. Russell first acquired the 1/16 royalty interest, when the heirs of Russell were placed in possession of the estate in Louisiana and the executors were discharged by order of the district court. One of Russell’s heirs, a daughter, Janet, born on April 24, 1924, was a minor. The present suit was filed on October 5, 1944. We find that a disclaimer, dated October 17, 1944, was filed in the record on October 19, thereafter, wherein the executors disclaimed any interest in the royalties and stated that they accepted the royalty deed as shown in the instrument only, in their official capacity as executors for the benefit of the widow in community and heirs of Emerson C. Russell deceased. They further stated that they have never claimed any interest in the royalties whatsoever.
 

 The plaintiff concedes that prescription does not run against the minor, Janet Russel, now Sirles but contends that the minor acquired no interest in the property until after the right, which she claims, had been extinguished by prescription. The plaintiff takes the position that the executors were not authorized to purchase the royalty interest and, therefore, the title to it is vested in the executors individually and not in the succession or heirs whom they represented.
 

 Under the plain provisions of Article 3554 of the Revised Civil Code, prescription does not run against a minor except in the cases specified by law. This article is contained in the section of the Code dealing with liberative prescription and the cases specified by law where prescription runs against a minor have no application to the liberative prescription of ten years.
 

 Under the Provisions of Article 1660 of the Revised Civil Code, it is the duty of executors who have been given full seizin, as was done in this case, to execute the legacies contained in the will and to cause any other conservatory acts of the property to be made. A suit for this, purpose may be brought by the executor in his own right and capacity under the provisions of Articles 1135 and 1660, R.C.C. Smith v. Sinnott, 44 La.Ann. 51, 10 So. 413.
 

 An executor may buy land for a. succession which he is administering upon which his testator has a mortgage and vendor’s lien for the purpose of saving the debt and bringing back property to the succession. Guilbeau v. Millard, Manning’s Unrep. Cas. 308.
 

 There is no question but what the executors were doing a conservatory act and one which redounded to the benefit of the succession when they salvaged from the contract the royalty interest. But be that as it may, only the heirs alone have-the right to question the authority of the executors in effecting a compromise, settlement or adjustment. Delabigarre v. Second Municipality of New Orleans, 3 La. Ann. 230.
 

 
 *309
 
 Moreover, in the' case of Standard Oil Co. of Louisiana v. Futral et al., 204 La. 215, 15 So.2d 65, 73, wherein a person by the name of Van Geffen had acquired a mineral interest in certain lands from Futral in his own name and afterwards had addressed a letter to other parties showing they had an interest in the minerals that he had purchased from Futral, this Court had this to say: “Since Van Geffen is not complaining, but concedes that the others named in the letter own the undivided interests in the minerals as set out therein, Futral has no right to complain, because he does not now deny that by his sale to Van Geffen he divested himself of title to an undivided 1/64 of his minerals or mineral rights.”
 

 Since the deed is made to the executors in their official capacity and they have at no time claimed any interest in the royalties, it is our opinion that title vested in the estate of Emerson C. Russell at the time the royalty interest was acquired by them on December 27, 1929, before prescription had accrued. Consequently, the minor’s interest became vested in her at that time, subject to administration by the executors.
 

 It is contended that the minority of Janet Russell interrupts the running of prescription against the other defendants herein. The contention is based on the ground that a royalty right, of the nature involved herein, is a personal servitude and that the minority of one of the co-owners interrupts the running of prescription against the other co-owners under the provisions of Article 802 of the Revised Civil Code.
 

 No useful purpose could be gained in considering the arguments advanced to support this contention for the reason that this Court passed on a royalty right of a similar character in the case of Vincent v. Bullock, 192 La. 1, 187 So. 35 and arrived at the conclusion that it was not a servitude but a conditional obligation, depending on an uncertain event, that prescribed in ten years if the event did not happen prior thereto. We refused to apply Article 792 of the Revised Civil Code which deals with obstacles preventing the use of a servitude. We pointed out that a royalty right, unlike a servitude, imposes no obligation on the part of the royalty owner to explore for and develop minerals. We cited with approval the analysis of the word “royalty” in Mrs. Harriett Spiller Daggett work on mineral rights in Louisiana. The author states that the legal nature of royalty must be grounded upon the contract in which it appears. After discussing royalties grounded upon lease and servitudes, the following observation was made: “If the word is used in the contract to indicate a passive interest in possible production,-without the leasing or production privilege usually inherent in the right, then a new and as yet uninterpreted situation appears upon which the court has not declared itself • fully.” The royalty right involved in the .Bullock case was a passive interest in possible production and the court passed directly on a
 
 *310
 
 royalty of that nature and held that such right prescribed in ten years, if there was no production prior thereto.
 

 At the time the Civil Code was. adopted the oil industry was not in existence. Consequently, the framers of the Code did not contemplate the various questions and problems arising in the course of the industry. The Legislature has not seen fit to adopt statutes sufficient to guide the courts in determining the various controversies arising in this industry. Under such circumstances, the court was compelled to apply the articles of the Civil Code that were most applicable to the nature of the rights asserted. In doing so, mineral rights, strictly speaking, were deemed in the nature of a servitude because a privilege was granted to explore for and develop the minerals. In order to do this, it was necessary to go upon the land. The right being in the nature of a servitude, the codal articles dealing with servitudes were applied and the prescription of non-usage, dealing with servitudes, was applied when the right had not been exercised within ten years. A mineral right is necessarily superior to the royalty right in that, in addition to the right to share in any production, the owner of a mineral right can go upon the land to explore and develop minerals. A mineral right prescribes in ten years if it has not been used. There would seem to be no just reason why a passive royalty right should exist for a longer period of time, simply because it could not be used or prescription could not be interrupted. When the Bullock case was presented to this Court some rule had to be established and we arrived at the conclusion that 'the rule established therein was the most reasonable one. It must be borne in mind that we had no exact rule to apply and consequently applied the articles of the Code most applicable to the nature of the right involved. But be that as it may, the Bullock case was handed down in 1939 and its pronouncements have been affirmed by this Court and have remained as a guide for those dealing in oil royalties for a number of years. It has established a rule of property. It is well settled that decisions of the highest court of a State on the subject of oil rights establish rules of property and should not be reversed unless it be by an act of the Legislature even should a different rule be deemed more logical. Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 82 A.L.R. 1264 and the authorities cited therein. Our conclusion is therefore that the minority of Janet Russell does not interrupt the running of prescription against the other defendants. Since there was no production of oil on the lands within the ten year period, all the royalty rights of the defendants, other than Janet Russell, have prescribed.
 

 It is contended that the royalty right has been maintained in effect as against any prescription by its continuous exercise, in the sense that not more than ten years have elapsed between bona fide drilling for production of oil, regardless of
 
 *311
 
 whether such drilling be successful or not. This contention is answered by our above conclusions. We arrived at the conclusion that the right was not a servitude, but a conditional obligation depending on an uncertain event- that prescribed in ten years if the event, production of oil, did not occur within that period of time.
 

 It is contended that the Legislature by Act No. 232 of 1944 has interpreted the holding in Vincent v. Bullock as applying the liberative prescription of ten years to a royalty right, carrying with it all the rules relating to the suspension of that prescription and particularly the rule laid down in the case of Sample v. Whitaker, 172 La. 722, 135 So. 38.
 

 Section 1 of Act No. 232 of 1944 reads as follows: “Be it enacted by the Legislature of Louisiana, That despite the fact that among co-proprietors of any mineral or royalty right there be one or more against whom prescription cannot run, as, for instance, a minor, the liberative prescription shall nevertheless run against the co-proprietors not under legal disability.”
 

 It is pointed out that mineral royalty rights are placed in the same category by the act. As we take it, the legislative intent is not in conflict with the holding in the Bullock case for the reason that it is directed at the same result, viz.: that the minority of one of the co-owners would not prevent the running of prescription against his coproprietor. At the time the Legislature passed this Act in 1944 the holding in the Bullock case had been in existence some five years. This Legislature or prior Legislatures did not see fit to modify or change the pronouncements made in the Bullock case. Since the Legislature-has not seen fit to change the law as it was interpreted in the Bullock case, we must, assume that it is not disposed to do so. Succession of Sciaccaluga, 177 La. 796, 149 So. 458.
 

 The plaintiff evidently abandoned his claim for damages because it was not urged in the brief or in the argument on this appeal. Moreover, there is no evidence in the record upon which we could assess damages with any degree of certainty.
 

 For the reasons assigned the judgment of the district court is reversed and set aside. It is now ordered that the plaintiff have-judgment against the defendants — The University of Texas, Stephen L. Pinckney, W. H. Cocke,"David M. Picton, Jr., Mrs. Lady Parnell Russell Groverman, Franklin J. Russell, individually and as guardian of' the interdict Beatrice Russell, and Nat U.. Collier- — decreeing the conveyance from the St. Martin Land Company to Emerson C. Russell of date January 5, 1928 and April 25, 1928, recorded in Conveyance Book 108, Folio 474, Entry No. 48,732 null, and void in so far as they are concerned. The plea of prescription is sustained except as to Janet Russell Sirles. It is further-decreed that Janet Russell Sirles is hereby recognized as owner of of 5%% of 1/16.
 
 *312
 
 royalty interest in all oils produced from the lands described in the royalty deed from St. Martin Land Company to Emerson C. Russell, aforementioned in this decree. All costs to be paid by the defendants with the exception of Janet Russell Sirles.
 

 O’NIELL, C. J, concurs in the decree.
 

 IIAMITER, J., concurs in the decree and assigns written reasons therefor.