## SPINER v. PHILLIPS PETROLEUM CO. et al.

### Civ. A. No. 2987.

United States District Court
W. D. Louisiana, Shreveport Division.

Dec. 6, 1950.

Irwin I. Muslow, Shreveport, La., for plaintiff.

Jackson, Mayer & Kennedy, Shreveport, La., for Phillips & McGee.

Paul R. Mayer, Shreveport, La., for Mitchells.

PORTERIE, District Judge.

Judgment on motions to dismiss for lack of grounds to justify relief, filed by (a) Phillips Petroleum Company and Kerr-McGee Oil Industries, Inc., and by (b) Howard and Minerva Mitchell.

Howard Mitchell, husband of Minerva Mitchell, both defendants herein, owns the following described 220 acres of land: S½ of the SW¼ of the SW¼ of Section 29; the SE¼ of the NE¼ and the NW¼ of the NE¼ and the NE¼ of the NW¼ of Section 31; the W½ of the NW¼ of Section 32, all in Township 12 North, Range 14 West, DeSoto Parish, Louisiana.

On June 12, 1940, Howard Mitchell, joined by his wife, Minerva Hogan Mitchell, conveyed to M. J. Ryan a "mineral royalty interest" in the above described 220 acres. This royalty deed contains the following provisions:

"The royalty interests and rights herein sold, transferred and conveyed are:

"(a) *One-fourth* (¼) of the whole of any oil, gas or other minerals, except sulphur, on and under and to be produced from said lands; delivery of said royalties to be made to the purchaser herein in the same manner as is provided for the delivery of royalties by any present or future mineral lease affecting said lands.

"(b) *Fifty* (50¢) cents per long ton for all sulphur produced from said lands, payments therefor to be made monthly for sulphur marketed.

"This sale and transfer is made and accepted subject to an oil, gas and mineral lease now affecting said lands but the royalties hereinabove described shall be delivered and/or paid to the purchaser out of and deducted from the royalties reserved to the lessor in said lease. This sale and transfer, however, is not limited to royalties accruing under the lease presently affecting said lands but the rights herein granted are and shall remain a charge and burden on the land herein de-

scribed and binding on any future owners or lessees of said lands, and, in the event of the termination of the present lease, the said royalties shall be delivered and/or paid out of the whole or any oil, gas or other minerals produced from said lands by the owner, lessee or anyone else operating thereon.

"The grantor herein reserves the right to grant future leases affecting said lands so long as there shall be included therein, for the benefit of the grantee herein, the royalty rights herein conveyed; and the grantor further reserves the right to collect and retain all bonuses and rentals paid for or in connection with any future lease or accruing under the lease now outstanding.

"To have and to hold said royalty rights unto the said purchaser, forever; and the said grantor hereby agrees to warrant and forever defend said rights unto the said purchaser against any person whomsoever lawfully claiming or to claim the same."

Also, on the same date, Howard Mitchell, and his wife, conveyed to Mrs. S. P. Baker a one-eighth ($\frac{1}{8}$) royalty interest in this same property and the same language as above quoted was used in the conveyance of this interest.

On June 12, 1940, Mrs. S. P. Baker conveyed to M. J. Ryan, the interest which she had acquired from the Mitchells. Also, on June 12, 1940, M. J. Ryan conveyed to Chas. B. Spiner, one of the plaintiffs herein, a total one-eighth ($\frac{1}{8}$) mineral royalty interest in the above described 220 acres, using the same language as above set forth. Also, on June 20, 1940, M. J. Ryan conveyed to Chas. B. Spiner and P. Juran, a total of one-sixteenth ($\frac{1}{16}$) mineral royalty interest in the 220 acres involved herein, using the same language used in the first deed above quoted.

Thereafter, on July 29, 1941, Chas. B. Spiner, P. Juran, M. J. Ryan, and Frank Meier (who had acquired an interest in the royalty purchased from the Mitchells) and Mrs. S. P. Baker (who had also acquired an interest as above set forth) executed an instrument, a certified copy of which has been filed herein, which provides that in the conveyances from Howard Mitchell and Minerva Mitchell to M. J. Ryan it was the intention of the parties thereto that there should be conveyed a one-fourth ($\frac{1}{4}$) of the one-eighth ($\frac{1}{8}$) royalty interest originally retained by Howard Mitchell and wife, in and to the oil, gas and other minerals that might be produced in the above described land, under and by virtue of the oil and gas lease then existing, or that might in the future be executed covering said lands, but through error, this conveyance recites and states that there is conveyed a one-fourth ($\frac{1}{4}$) of the whole or any oil, gas or other minerals, except sulphur, in and under or that may be produced from said lands, and this same error was made in executing a conveyance from Ryan to Spiner and Meier, as to which it was the intention that each should acquire one-eighth ($\frac{1}{8}$) of the one-eighth ($\frac{1}{8}$) royalty of oil, gas or other minerals that might be produced from said lands. It was further stated that Chas. B. Spiner was the owner of an undivided one-sixtyfourth ($\frac{1}{64}$) plus a one-half ($\frac{1}{2}$) of an undivided $\frac{1}{128}$ of the whole of any oil, gas or other minerals except sulphur, in and under and that may be produced from said lands; "delivery of said royalties to be made unto him in the same manner as is provided for the delivery of royalties by any present or future mineral leases affecting said lands". P. Juran was recognized as the owner of a $\frac{1}{2}$ of an undivided $\frac{1}{128}$ of the oil, gas and other minerals, except sulphur, payable in the same manner as quoted relative to Spiner. Frank Meier was recognized as the owner of a $\frac{1}{64}$ of the minerals produced subject to the same terms. M. J. Ryan was recognized as the owner of a $\frac{1}{128}$ interest in the minerals subject to the same provisions.

These parties further stipulated in this agreement, dated July 29, 1941, as follows:

"That said appearers declare and acknowledge that they do hereby release and renounce unto and in favor of Howard Mitchell and Minerva Mitchell, all of the oil, gas and other mineral royalty interests, except sulphur, conveyed unto M. J. Ryan and unto Mrs. S. P. Baker by the two Acts

of Sale dated June 12, 1940, described in paragraphs 1 and 2 hereof, excepting and reserving the interests presently owned by the parties and as set forth in paragraph 3 hereof.

"It is understood that all rights acquired under the aforementioned conveyances be and the same are hereby retained subject to the statement of the proportionate royalty interests presently owned by each of them as herein stated."

On January 7, 1946, Howard Mitchell and Minerva Mitchell executed an oil and gas lease in favor of Travis O. Wright, covering all of the above described property, said lease being for a primary term of ten years. On February 4, 1946, Wright assigned to Kerr-McGee Oil Industries, Inc., this lease, and on August 9, 1946, Kerr-McGee Oil Industries, Inc., conveyed to Phillips Petroleum Company an undivided ½ interest therein. The lease was executed on a regular commercial form of oil and gas lease with no drilling obligations, being printed on Bath's form La-Spec. 14-BRI, a certified copy of which is of record.

Up to and including June 12, 1950, there had never been any well drilled upon any of the above described 220 acres of land, nor had there been a well drilled upon any land with which any part of the above described property had been unitized, either voluntarily or by action of the Conservation Commission of the State of Louisiana.

The marital status of neither of the plaintiffs has changed since he acquired his royalty interest in the property herein involved.

Thus it appears that at the time of filing of this suit Kerr-McGee Oil Industries, Inc., and the Phillips Petroleum Company were the joint owners of an oil and gas lease covering the Mitchell lands.

The plaintiffs allege that on or about September 5, 1949, Phillips Petroleum Company, and others, completed, as a commercial producing oil, gas and distillate well, a well located in the approximate center of Section 33, Township 12 North, Range 14 West, which adjoins Section 32, as above mentioned. Plaintiffs further set forth that Section 33 was unitized under the Conservation Commission of Louisiana action and that said Section is being produced as a unit. Plaintiffs allege that defendants herein, Phillips Petroleum Company and Kerr-McGee Oil Industries, Inc., had delayed an unreasonable time in commencing drilling upon the property involved herein located in said Section 32, and that if operations for drilling were not commenced on or before June 12, 1950, the royalty interests of the plaintiffs would be prescribed. Plaintiffs allege that they have suffered by drainage and will suffer further damage in the event their royalty interest is prescribed. Plaintiffs further seek relief to stay the effect of the statutes of Louisiana upon the termination of their royalty interests as against Howard and Minerva Mitchell.

The defendants, Howard and Minerva Mitchell, contend that the facts and circumstances as set forth in plaintiffs' petition and in the various instruments filed in the record upon which they base their claim fail to state a claim against them upon which relief can be granted. The defendants, Howard and Minerva Mitchell, have filed a motion to dismiss for lack of grounds to justify relief. It is this matter that is now before the court.

### Review of Plaintiffs' Complaint

Plaintiff alleges that Howard Mitchell and his wife did own at the time of the purchase of their royalty and still own the fee title to the hereinabove described lands and that they leased the said land on or about June 12, 1940, and reserved unto themselves the customary ⅛ royalty interest.

Then plaintiff alleges the acquisition by himself and Juran of the hereinabove described royalty interest.

It is alleged on or about September 5, 1949, a well was successfully completed in Section 33, just to the east of and adjacent to Section 32 wherein 80 acres of the Mitchell tract lies, and that by virtue of this well the defendant oil corporations became obligated to drill the Mitchell tract.

It is then shown that the Louisiana Conservation Commission has established a

spacing rule in this area of one well to each 640 acres, or, in other words, one well to each section.

Plaintiff complains that at one time the defendant Phillips Petroleum Company indicated that they intended to drill the Mitchell lease in Section 32 but that on or about April 14, 1950, the said defendant made it known that they did not intend to drill such a well since they had been unable to get the other owners in Section 32 to contribute their prorata share of the cost of the well.

Plaintiff alleges that an unreasonable length of time has elapsed since the completion of the well in Section 33 and that the oil corporations should be required to commence drilling in Section 32 or surrender the lease to the defendant Mitchell.

Plaintiff complains that the Louisiana law of prescription will cause him to lose entirely his royalty interest unless the oil corporations "commence drilling operations" before June 12, 1950, and adds the afterthought "but for the equitable powers of this Court."

Plaintiff continues his petition with the allegation that Howard Mitchell and his wife have a right to demand that Section 32 be drilled and that by their failure to do so they will effect the termination of his (Spiner and Juran) royalty and seeks the equitable intervention of the Court in staying the running of prescription against his royalty interest.

In article 14 of plaintiffs' complaint they allege that the Mitchells have been derelict and negligent in not enforcing the said lease and in not demanding that the defendant oil corporations drill Section 32 and thus save further drainage and that they should not be able to take advantage of their inaction at a later date and urge the non-development of the lease as a basis for the termination of plaintiffs' royalty.

Plaintiffs contend that the defendant Mitchell should be required to join with him in a demand to have drilling operations commence immediately in Section 32 or file suit to terminate the lease.

Plaintiff contends that in spite of the fact that his royalty interest will expire by virtue of the operation of the substantive law of the State of Louisiana that his interest should be "confirmed as valid during the existence of the said lease notwithstanding the operation of the laws of the State of Louisiana as to 10-year royalty termination for non-production or development and that the effect of such laws of Louisiana be stayed during the existence of said lease * * *."

Plaintiff concludes his case against the defendant Mitchell with the prayer: " * * * [A]nd for such injunctive relief and orders in equity to stay the effect of the statutes of Louisiana upon the termination of the plaintiff's royalty interest herein as against Howard and Minerva Mitchell * * *."

We find that Spiner and Juran acquired a mineral royalty interest; the various instruments prove it.

The law of the state of Louisiana does not give to a mineral royalty owner the rights and remedies asserted and prayed for in the complaint.

In Vincent v. Bullock, 192 La. 1, 187 So. 35, the Louisiana Supreme Court held that the reservation of a royalty right to the oil, gas, and other minerals in a tract of land imposes upon the property a real obligation and is a species of real right running with the land, subject to the prescription of 10 years liberandi causa.

The Supreme Court of Louisiana further said: "True the contract did not designate a time within which the event must happen, nevertheless that time is limited by law and 'the condition is considered as broken, when the time [10 years] has expired without the event having taken place.'" 187 So. 35, 42.

In the case of St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169, Justice Hamiter, in referring to royalty, said: "When royalty is sold, as the purchaser knows, the landowner does not obligate himself either to develop the land or to lease to a third person for exploration purposes. But the purchaser also knows that it is to the landowner's interest to lease the property on as favorable terms as he can in order to obtain a bonus, delay rent-

als, and possibly drilling with resulting royalties from production; and it is this knowledge which furnishes him the hope of gain from the royalty purchase and justifies his paying for it." 33 So.2d 169, 175–176.

We now come to the case of Humble Oil & Refining Co. v. Guillory, 212 La. 646, 33 So.2d 182, most interesting with relation to the case at bar because the plaintiffs at bar claim that defendants, Mitchells, had the obligation to demand drilling of the defendants, Phillips Petroleum Company and Kerr-McGee Oil Industries, Inc., and that such oil companies had the obligation to drill the leases which they own upon the property involved herein.

In the first opinion the Court said: "The execution of future leases is left entirely to the will of the landowner and is incapable of enforcement. Many contracts involving potestative conditions have been entertained by this Court, but we have been unable to find a single case where a decision was contrary to the views herein expressed. In all of the cases where a contract with a potestative condition has been upheld there has been at least a promise to do something. Under the terms of the Garland deed there is no obligation on the part of the landowner to fix any definite royalty interest in the future leases. In other words, the deed purports to convey an undivided one-fourth interest in whatever royalty interest the landowner may stipulate. It does not obligate the landowner to lease the property. It merely states that royalty interest is conveyed in any mineral lease that the landowner may execute. The deed strictly confines the interest to leases that the landowner may execute. In fact, the landowner did not obligate himself to execute future leases and the amount of royalty interest conveyed is uncertain in that the landowner could stipulate any royalty in any future lease that he saw fit." 33 So. 2d 182, 185-186.

In this Guillory case, supra, the interest conveyed was:

" 'The undivided "one-fourth (¼) interest in and to all royalties stipulated for or hereafter to be stipulated for, in any oil, gas or mineral lease that may be or has been executed by vendor in favor of third persons and more particularly in that certain lease executed in favor of the Louisiana Oil & Refining Corporation * * *." '

" ' * * * It being well understood and agreed that the interest herein conveyed is and will remain an interest in and (to) all contracts by the vendor with third persons for the explorations and development of the said lands for oil, gas or other minerals, the purchaser not to participate with the vendor in any of the proceeds of the rental of the said land for said purposes, but only to share in the royalties in the proportions above set forth.

" 'This grant to be continuous and to run with the land into whomsoever's hands it may fall; by assignment, bequest, devise, or otherwise.' "

On rehearing, the Court reversed itself and held that the right which was reserved in a royalty deed did not create a potestative condition and was valid. The Court further said: "In the usual mineral royalty deed the purchaser does not receive from the landowner an obligation to drill or to grant a lease for exploration purposes. All that he acquires is a right attached to the land and the assurance that he will receive his share of the oil produced therefrom if and when successful production results." 33 So.2d 182, 192.

The following cases are confirmatory of the general principles: Martel v. A. Veeder Co., 199 La. 423, 6 So.2d 335; and, Continental Oil Company v. Landry, 215 La. 518, 41 So.2d 73, 75.

And from the latter case, we should quote:

"It is also well settled that this right is merely one to share in the production of oil, gas, and other minerals if and when they are produced from the property subject to the right. It is passive in its nature, and there is no obligation on the royalty owner to develop the property, nor does he have this right. All that he acquires is a right attached to the land, the right to receive his share of the minerals if and when they are produced. St. Mar-

tin Land Co. v. Pinckney et al., 212 La. 605, 33 So.2d 169; Union Sulphur Co., Inc., v. Lognion et al., 212 La. 632, 33 So. 2d 178; Humble Oil & Refining Co. v. Guillory et al., 212 La. 646, 33 So.2d 182. His share of the minerals when they are produced is royalty. At the moment of the execution of the royalty sale, under our holding in Vincent et al. v. Bullock et al., supra, a species of real right is created, imposing a burden upon the land, which is subject to the prescription of 10 years liberandi causa. It is therefore from the land that the royalty owner receives his royalty * * *.

"In the past this court has observed and stated that a mineral right is necessarily superior to a royalty right. The owner of the mineral right has the right of ingress to, and egress from, the land, the right to produce the minerals, the right to participate in the bonuses and delay rentals paid under the terms of any lease. On the other hand, the owner of a royalty right has none of these rights, nor is his consent even necessary for the execution of a lease by the mineral owner, his right being to share in production if and when it is had." 41 So.2d 73, 75.

 In the case at bar it is clear that plaintiffs, Spiner and Juran, purchased only a royalty right, which carries with it only the right to receive a share in the minerals in the land covered by the conveyance, if, as, and when produced. The royalty owner has no right of ingress or egress, nor has he any right to drill and test the property for oil or gas. His right is merely a passive right which allows him to participate in the production of any oil or gas that might be produced from the land involved. It is therefore apparent that he has no rights at all to require the lessee of the mineral owners to drill upon the property involved and that is just what the plaintiffs are attempting to do in the case at bar. Spiner and Juran never acquired these rights; it was never contemplated that they should have these rights; and they never paid for them. They are now attempting to assert rights which they never intended to acquire and never did acquire. Therefore, they have no

cause of action against the defendant lessees in this case and have stated no cause upon which relief might be granted them.

A cursory reading of Chapter VI, "Royalty", in Louisiana Mineral Rights, by Mrs. Harriet S. Daggett, eminent professor of law at our State University, convinces one that she, as a general proposition, agrees with our courts in their pronouncements on rent royalty and royalty per se. However, she finds imperfections; we have no fault with that. She thinks that though there is no guaranty that fish would be caught, the net had to be cast, etc. See pp. 285-287. In our case here, we are denying the plaintiffs the cast of the net. But she does conclude understandingly: "The court must decide and is denied pursuit of the delightful byways so dear to the heart of the commentator." p. 287.

But she does realize that the oil business needs something practical for she explains at p. 276, as follows: "The court [in the case of Vincent v. Bullock, supra] made clear the distinction between royalty under an existing lease, likened unto rent because consideration for the lease, and royalty sold independently without the right to search and as a possible issue from the land. *Laymen are clear on the distinction and many landowners are willing to sell royalty when they are not willing to part with control of their right to search.* (Emphasis ours.)

And on page 269, we find the following: "Another possibility for major advantage in this type of contract is that if the owners of these factional 'royalty' interests retain no power to lease the land, then in the event of a lease or re-lease their participation is not required. It has been pointed out that in some sections of the United States fractional royalty interests to a 1/200,000 have been disposed of which makes releasing a practical impossibility under contracts requiring their signature. In Louisiana, contracts are in existence wherein appear fractions to the 119,317/5,000,000 and 3,340,909/11,000,000. The difficulty would be even greater in a suit requiring joinder. If these holders are deemed *servitude* owners, then it would

be necessary practically to get their consent to use the servitude even if the court decides that any holder of a fractional servitude can exercise it without reference to his co-owners."

There is no allegation in the complaint of the plaintiffs that either of the sections in which the above described property is located has been unitized. To drill a well upon these sections it would be necessary for a lessee to unitize each section by amicable agreement by all parties concerned or by forced unitization by an order of the Conservation Commission of Louisiana. Also to drill a well would cost several thousand dollars, many thousands of dollars more than the value of the plaintiffs' royalty interest under the entire property involved. If the parties owning leases on the remaining portions of any one of these sections refused to join in a well, then these companies would drill such a well at their own risk, so far as the cost of same would be concerned. Plaintiffs have no right to demand of the Phillips Petroleum Company and Kerr-McGee Oil Industries, Inc., that they, if they would be unsuccessful in securing contributions from other lessees, drill at their own cost on either or all of the sections involved herein. As heretofore pointed out, plaintiffs have only a passive right to receive their proportion of production if and when secured. They have no right to demand a well of their vendors and clearly then, they have no right to demand any drilling of their vendor's lessees. The oil and gas lease covering the property involved herein is a straight commercial lease having a primary term of ten years with no absolute drilling obligation.

The plaintiffs ask a money judgment against these defendants, but since these defendants are under no obligation of any kind to these plaintiffs to drill this property, they are clearly not responsible in damages to these plaintiffs. There has to be a duty or an obligation before the plaintiffs could ask for damages against these defendants. Such does not exist.

Obviously, it follows that injunctive relief is not proper, nor permissible.

Accordingly, the motions to dismiss for lack of grounds to justify relief, filed by (a) Phillips Petroleum Company and Kerr-McGee Oil Industries, Inc., and by (b) Howard and Minerva Mitchell, are allowed and plaintiff's action dismissed.