627 So.2d 669 (1993)
In the Matter of CARLINE TANK SERVICES, INC.
No. CA 92 0604.
Court of Appeal of Louisiana, First Circuit.
August 13, 1993.
Frank S. Craig, III, William F. Ridlon, II, Breazeale, Sachse & Wilson, Baton Rouge, for appellant Carline Tank Services, Inc.
James Thompson, Harry B. Ward, Office of Legal Affairs & Enfor., Baton Rouge, for appellee State of La., thru the Dept. of Environmental Quality.
Before WATKINS, CRAIN and GONZALES, JJ.
GONZALES, Judge on rehearing.
Appellant, Carline Tank Services, Inc., (hereinafter "Carline") has applied for rehearing. Because Carline's arguments[1] in support of that application reveal areas in which our opinion in the matter may have been too brief to facilitate adequate comprehension by all readers thereof, we shall provide more in depth reasoning in this opinion on the rehearing application. In the original opinion of this court, 626 So.2d 358, it was held that appeals from DEQ determinations are authorized under La.R.S. 30:2024(C) only in instances where the action complained of is "a final decision or order" as defined by Delta Bank & Trust Co. v. Lassiter, 383 So.2d 330 (La.1980); i.e., a final disposition required by constitution or statute to be determined *670 on the record after notice and opportunity for an agency hearing.[2] Thus, under Delta Bank, either of two tests is applied to the facts of a particular case to determine whether an action complained of is a "decision or order" and, therefore, appealable. The first test concerns whether the party aggrieved is claiming a constitutionally protected right, such as a liberty or property right. When governmental action deprives a party of such a right, procedural due process (encompassing the right to a hearing, notice, record, and judicial review) applies. If no constitutionally vested right is at issue, one looks to the statutes to determine if the legislature has deemed the governmental action so important as to require a hearing on the record and notice thereof.[3] Although there is no right to appeal most matters decided by DEQ, parties may apply for supervisory review of non-appealable cases under La. Const. Art. V, § 10(A).
In 1984, the Louisiana Supreme Court, in the case of Corbello v. Sutton, 446 So.2d 301 (La.1984), settled what had been a series of confusing and conflicting opinions by this circuit on the question of the proper method of appeal from the decisions of the commissioner of conservation. In that case, Justice Dixon followed a well-recognized principle of legislative interpretation that legislation which addresses a more particularized subject matter prevails over more generalized legislation. The court held that the specific provision in La.R.S. 30:12, governing the conservation commissioner and establishing the method and time frame for appeal, takes precedence over the more generalized statutes of Louisiana Administrative Procedure Act found in Title 49. The court said in part:
When the APA was adopted in 1966, more than twenty years after the enactment of the Conservation Act, it was not intended to supersede the specific provisions of other administrative acts, or to supersede the rights and remedies created under those acts. Instead, it was intended to create procedures in those instances where none existed. In matters dealing with the Conservation Act, procedures already existed, and to the extent that there are any inconsistencies, the specific Conservation Act rules apply.
There is absolutely no question that in the case before us, the specific provisions of La. R.S. 30:2024 apply in determining the appellate process for decisions of the secretary of the Department of Environmental Quality. There is no contention in the original opinion of this court which indicated that the Administrative Procedure Act should govern over the specific provisions of La.R.S. 30:2024.
The duties of the secretary of the Department of Environmental Quality are enormous. Significant functions of the secretary include issuing permits, handling matters related thereto and enforcing environmental laws, rules and regulations. Because environmental litigation can be quite protracted, the legislature made numerous amendments to § 2024 in order to speed up the appellate review process.
Any statute regulating appellate review of an administrative agency should set out: 1) who may appeal (standing), 2) what type of matters (the subject matter of appeal) may be appealed,[4] 3) the time period within which to appeal, 4) the court to which appeals should be taken, and 5) the standard for review by appellate courts. La.R.S. 49:964, which is the appellate review section of Louisiana administrative law, covers all of these areas. This statute was derived from a combination of both federal administrative law and the Model State Administrative Procedure Act. The appellate jurisdiction is set out as review of "a final decision or order in an adjudication proceeding." As we know from the decision in Delta Bank and Trust v. Lassiter, 383 So.2d 330 (La.1980), in the definitional sections of the Louisiana Administrative Procedure Act, § 951(3), "decision" and *671 "order" are very precise legal terms. They are not generic terms that mean any decision or any order. Section 964 also identifies the "who" in the appellate process when it says "a person who is aggrieved of a final decision or order may appeal." (Emphasis added.) Section (G) of 964 outlines the standards for appellate review. This section also gives the time period within which an appeal may be taken, namely, thirty days. Finally, the statute directs to which court appeals may be addressed.
An analysis of La.R.S. 30:2024 reveals that it is structured in much the same way, although not nearly as comprehensively, as the Administrative Procedure Act. With regard to who may appeal, the section says "any person aggrieved by a final decision or order of the secretary may appeal." With regard to appellate jurisdiction, the statute uses the identical phraseology of the Administrative Procedure Act stating that the appeal may be made of "a final decision or order."[5] The time period within which to appeal is exactly the same as the APA's, namely, thirty days after the decision or order is served.
Apparently in order to expedite review, the legislature provided in § (A) of 2024 as follows:
Any enforcement or permit action shall be effective upon issuance unless a later date is specified therein. Such action shall be final and shall not be subject to further review unless, no later than twenty days after the notice of action is served by certified mail or by hand upon the respondent, he files with the secretary a request for hearing. Upon timely filing of the request, the secretary shall either grant or deny the request within twenty days. If the request for hearing is granted, the issues raised in the request shall be resolved by an adjudicatory hearing before a hearing officer. Any appeal from a final decision of the secretary shall be in accordance with the provisions of R.S. 30:2024(C). If the request for hearing is denied, or the secretary does not act on the request within twenty days after the timely filing, the respondent shall, within twenty days from the denial or the lapse of the period for the secretary to act, be entitled to file an application for de novo review of the secretary's action in the Nineteenth Judicial District Court for the parish of East Baton Rouge.
The first sentences of this section deal with the internal review process of the agency. Actions are quickly effected and not subject to further internal agency review. A respondent, and only a respondent, has access to a hearing.[6] As the last sentence of the above quoted provision indicates, appellate review is governed by § (C) of 2024. The legislative history of § (A) makes it clear that the legislature intended to speed up the appellate process, in particular by directing appeals to the court of appeal and bypassing the district court.
As to the standard of review, § (C) of 2024 specifically excludes La.R.S. 49:964 and, thus, removes the six standards set forth therein for appellate review. However, these standards for review are imposed by analogy in the supreme court opinion of Save Ourselves, Inc. v. Louisiana Environmental Control Commission, 452 So.2d 1152 (La.1984). Therefore, on balance, § 2024 and § 964 are virtually identical, except with regard to the designation of the court conducting the appellate review.
Section (C) of 2024 was added by an amendment in La.Acts 1982, No. 322. This amendment came fully two years after the *672 decision in Delta Bank. The legislature in describing the decisions of the secretary which merit appeal, specifically chose the language "a final decision or order of the secretary." Where the legislature has not seen fit to change the law as it has been interpreted by the supreme court, it must be assumed the legislature has adopted such interpretation. See Monteville v. Terrebonne Parish Consolidated Government, 567 So.2d 1097 (La.1990); St. Martin Land Co. v. Pinckney, 212 La. 605, 33 So.2d 169 (1947); Kearns v. City of New Orleans, 160 So. 470 (La.App.Orl.1935).
It is argued that this court's decision in Matter of Marine Shale Processors, Inc., 563 So.2d 278 (La.App. 1st Cir.1990), should control the case before us. In Marine Shale the court was only concerned with the issue of whether an order was final. No argument was addressed by the court or advanced by the parties as to the exact meaning of the phrase "decision or order" nor did they address the issue of the appellate court's jurisdiction.
Many attorneys in arguing these types of cases before courts have assumed that the phrase "final decision or order" is a generic phrase. If the legislature intended "final decision or order" for the secretary of the Department of Environmental Quality to be a generic phrase and something different from "final decision or order" as generally applied in the APA, much chaos would result from such a distinction. The secretary of DEQ, for instance, could make a "decision" to have a certain meal for lunch and issue an "order" to purchase that meal. If "decision or order" is to be considered in its generic sense, that would be a "decision or order" of the secretary and presumably appealable by any person aggrieved as a result thereof. Perhaps a competitor restaurant that did not receive the order might be found to be aggrieved of that decision. Additionally, a "decision" by the secretary to close his office for several days to observe some event and an "order" carrying it out would also be a generic "decision or order." A party who had business with the secretary's office and needed for it to be open might also be considered to be aggrieved by that "decision or order" and would likewise have appellate rights. If we do not follow the confining definition of final "decision" or "order" as found in § 951(3) and in the Delta Bank case,[7] we are left without guidance as to the subject matter of appeal for this particular department.[8] A decision and order for the commissioner of Financial Institutions, for the commissioner of Conservation, and for every other state agency would have a very specific and definite meaning. However, the decisions and orders of the secretary of Environmental Quality would be left to the whims and caprices of any person aggrieved by any conduct of the secretary that resulted in any decision or order, however minute or unimportant.
When the ruling was made by the trial court in the Delta Bank case that technically "decision or order" had a finite meaning, it was predicted that such a ruling would greatly restrict the access of citizens to review the decisions of state administrative agencies. No great outcry appeared until recently when litigants finally began to understand the full import of the narrow decision by the supreme court in Delta Bank. The Delta Bank decision arose from a backdrop of political controversy regarding competing family factions in Plaquemines Parish during the establishment of a bank. Apparently few people were affected thereby and the case was little noted. Decisions of this circuit have either ignored or refused to follow Delta Bank.[9] *673 The solution to the narrow restrictions of the Delta Bank case lies with the legislature. All matters of such a serious nature as permit and enforcement actions performed by the secretary of Environmental Quality should be required by statute to be decided only after a hearing on the record and after notice. No statute enacted by the legislature currently mandates hearings on any matter under decision by DEQ. Only the internal rules of DEQ provide for mandated hearings, and in only a few circumstances. Under Louisiana Environmental Control Commission Rule 5.0, hearings are mandated only for: 1) administrative enforcement proceedings under La.R.S. 30:2025; 2) all permit applications for commercial hazardous waste disposal facilities; and 3) when permits or licenses are sought to be revoked.[10] Although we question whether such a rule would qualify as a statutorily mandated hearing as contemplated by Delta Bank, we do not decide that issue herein, as the circumstances of this case would not fall within the applicability of Rule 5.0.
Even if the rules do not provide for a hearing on a matter such as on a permit revocation, certainly due process would, since this would be a property right as recognized in Delta and a legion of other cases. See also Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Meyer v. Board of Trustees of Fireman's Pension & Relief Fund for City of New Orleans, 199 La. 633, 6 So.2d 713 (1942).
Another method of relief for persons aggrieved by the actions of administrative agencies is for the courts to take a very broad and expansive view of the constitutional rights recognized in the Delta Bank case. The original opinion in Carline attempts to point out that any allegation in any pleading by any citizen suggesting that their health, property or liberty interests would be affected by a final decision or order of the secretary is a sufficient pleading to put before appellate courts a constitutional right. In order to protect the health and welfare of the citizens of our state and to carry out the mandate of the environmental act, these rights must be broadly construed. The groups represented by brief of Amici Curiae have frequently espoused such interest. Clearly, where a constitutional issue is at stake, these groups would have standing to present them. However, it must be remembered that the appellant in the present case is simply a competitor, and as Delta Bank has so pointedly informed us, a competitor does not have a constitutional right to be free from competition. Permit decisions, enforcement decisions, and variances are frequently issues which affect the property rights of the various enterprises regulated by the office of the secretary. Not only should citizens who are affected by decisions of the secretary be given broad standing to sue, but also those who are regulated by that office should also be given broad standing.
Such issues point up another problem with the unartfully drafted § 2024(A). This section *674 talks about a request for further review of enforcement and permit actions, but limits the authority to make such a request to "the respondent." Apparently by the terms of section (A), the only way to receive an adjudicatory hearing is for the respondent to request it and for the secretary to exercise his discretion in granting it. It is abundantly clear that the drafters of the original 2024 in its various amendments were not particularly familiar with the terminology of administrative law such as "adjudicatory hearing" and "final decision or order," nor were they particularly familiar with the jurisprudence interpreting these legal terms. It is entirely correct that appeals are favored in the law, and the call by Amici Curiae to follow the extremely broad language of Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971), must be understood in the light of specific legislative enactments. The legislature clearly has the power to define the scope of appellate review as to administrative agency determinations under La. Const. Art. V, § 10(B), and the Delta Bank case and this case are strictly matters of interpretation of those types of legislative enactments. The issue in Bowen v. Doyal was not whether a party has a right to judicial review, but rather which court, the district court or the appellate court, was the proper court for original appellate jurisdiction. In Bowen, Justice Barham wrote:
This suit by Bowen for a review by the district court of the administrative determination was not a judicial appeal, but rather an invocation of original judicial jurisdiction. (Emphasis in original.)
253 So.2d at 205. Quoting from Code of Civil Procedure article 2082, he limited the notion of appeal to:
[T]he exercise of the right of a party to have a judgment of a trial court revised, modified, set aside, or reversed by an appellate court.
Id. at 205. Justice Barham cites the noted authority on administrative law, 4 Davis, Administrative Law Treatise §§ 28.01 et seq. (1958) and 1970 supplement as follows:
Many statutes granting administrative bodies the authority to act adjudicatively contain special provisions for the right of judicial review of the final determination at the highest level within the agency, as does the statute here involved. But even in the absence of such statutory authority, the right of judicial review of administrative proceedings is presumed to exist. Generally the availability of judicial review is necessary to the validity of such proceedings under our legal system and our traditions. The exceptions where judicial review of administrative determination is not given are so limited as not to require discussion in the present case.
Id. at 203. The interesting interpretation by Justice Barham is pure dicta because the right of judicial review was not at issue in Bowen, but rather the court to whom such review should be addressed was the issue. These rules were later changed by the 1974 constitution and interpreted in Moore v. Roemer, 567 So.2d 75 (La.1990), and Matter of American Waste & Pollution Control Co., 588 So.2d 367 (La.1991). The dicta of Bowen was squarely advanced in the trial court, the appellate court, and the supreme court in Delta Bank, and it was rejected.
The most significant jurisprudential development in this area is contained in the various opinions in Matter of American Waste, which interpreted portions of the following constitutional provisions of Art. 5 in pertinent part:
"Section 10. (A) Jurisdiction. Except as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of (1) all civil matters, ...
(B) Scope of Review. Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determination, appellate jurisdiction of a court of appeal extends to law and facts...." (Emphasis added).
"Section 16. (A) Original Jurisdiction. (1) Except as otherwise authorized by this constitution ... a district court shall have original jurisdiction of all civil and criminal matters...." (Emphasis added.)
That case squarely held that the "DEQ determinations are not civil matters within the meaning of La. Const. Art. V, § 16(A)." (Emphasis added.) Since DEQ determinations are not "civil matters" as used in Art. *675 V, § 16(A), it is difficult to see how these same determinations could be considered as civil matters within the meaning of Art. V, § 10(A), which sections confers appellate jurisdiction on the court of appeal. Justice Marcus in his dissent made this observation,
Moreover, the majority's reasoning that DEQ determinations are not "civil matters" within the meaning of Art. V, § 16 is inconsistent with the jurisdiction of the court of appeal, as set out in Art. V, § 10. That section gives the courts of appeal "appellate jurisdiction of all civil matters...." (emphasis added). Under the majority's reasoning, the First Circuit Court of Appeal would have no appellate jurisdiction over a DEQ determination since it is not a "civil matter."
588 So.2d at 375. Justice Dennis, in assigning additional reasons, seeks to solve the apparent conflict on this issue when he says,
Article V, § 10(A), of the 1974 Louisiana Constitution (West Supp.1991) provides that "[e]xcept as otherwise provided by this constitution, a court of appeal has appellate jurisdiction of ... all civil matters." Paragraph (B) of the same article provides that "[e]xcept as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts." Clearly, these provisions indicate that the legislature is empowered to provide by law that appeals from administrative agency determinations, such as those of the DEQ, may be taken to and reviewed by the courts of appeal.... [Emphasis added.]
Id. at 374. This constitutional quote by Justice Dennis is from paragraph (B) of Art. V, § 10 entitled "Scope of Review". Paragraph (A) of § 10 is entitled "Jurisdiction." Appellate jurisdiction generally deals with the type of matters subject to review, here, all civil matters. Scope of appellate review generally deals with the extent to which the appellate court may review matters under its jurisdiction. This section indicates that the scope of appellate review extends to law and facts and, thus, is a full and complete review (as opposed to those jurisdictions which have limited review). Justice Dennis's interpretation seems to be authority for the proposition that in matters concerning review of administrative agency determinations, the legislature is empowered by law to fix the jurisdiction of the appellate court. If this is correct, then that is exactly what has been done by the very narrow definition given to the terms "decision" or "order" as found in R.S. 49:951(3). It would also be correct to conclude that if the legislature has this power, it has likewise placed a highly restricted appellate jurisdiction (or scope of review) on this court by using precisely the same legal phrase, "decision or order," in R.S. 30:2024(C). If the concepts of "jurisdiction" and "scope of review" have been muddled, it is apparently within the power of the supreme court to do so.
Counsel for Carline and Amici Curiae lose sight of the specific issue decided in our original opinion. The merits of the permit grant are not before us. Even if Carline had standing to appeal, and even if the permit grant was a proper matter for our jurisdiction, the time for such appeal is thirty days after notice is served on the respondent. That date was November 12, 1990. The appeal was filed on December 28, 1990, and was untimely. The decision Carline timely appealed was a decision refusing a hearing under Rule 5.0. It has attempted to tack an appeal of the permit grant onto an appeal of a decision denying a hearing. The right to go to the 19th Judicial District Court as found in the last sentence of § (A) of 2024 is limited to the respondent, T.T. Barge, as noted above. Carline has no standing to use that avenue as judicial review. The right of appeal to this court is governed by La.R.S. 30:2024(C). Under the facts of this case, this court simply lacks jurisdiction to review this decision of the secretary of the Department of Environmental Quality denying a hearing.
Amici Curiae represent an important element in guarding our environment. Realistically, they are not truly aggrieved by the decision not to give Carline a hearing. Their real complaint is with the law which makes most hearings by the secretary discretionary and the law which severely limits appellate *676 review of agency actions. Amici Curiae should direct their considerable energy to the legislature for resolution of these deficiencies in the law.
The original opinion of this court was correct, and motion for rehearing is denied.
MOTION FOR REHEARING DENIED.
NOTES
[1] An additional memorandum has also been submitted by "Amici Curiae" who include: League of Women Voters-Louisiana, Gulf Coast Tenant's Organization, Louisiana Environmental Action Network, St. John Citizens for Environmental Justice, Southern Christian Leadership Conference, Louisiana Citizen Action, St. Bernard Citizens for Environmental Quality and Calcasieu League for Environmental Action Now (represented by the Tulane Environmental Law Clinic and referred to hereinafter as "Amici Curiae").
[2] But cf. Hagood v. Pickering, 386 So.2d 359 (La.1980).
[3] The ability of the legislature to narrowly define the governmental action such as "decision or order", coupled with its failure to provide for statutorily required hearings on the record after notice and its effect of the appellate jurisdiction of the court of appeal, is discussed later in this opinion.
[4] See the decision on Matter of American Waste infra.
[5] We express no opinion herein as to whether the restrictive view of appeal from DEQ decisions resulting from Delta Bank is constitutionally violative of La. Const. Art. 5, § 10. However, the supreme court has excluded from the definition of "civil matters" all DEQ proceedings. Matter of American Waste & Pollution Control Co., 588 So.2d 367 (La.1991).
[6] The actions that follow the denial of a hearing provide for an application for de novo review in the 19th Judicial District Court. The right of an applicant for de novo review in the district court is different from the right of "any person" to judicial review in the First Circuit Court of Appeal as provided in § (C) of 2024. We express no opinion as to what issues are reviewed by the district court de novo and the facts of the present case do not present a basis for a resolution of these apparently conflicting provisions. This section has been recently amended to help clarify this question. La.Acts 1993, No. 567.
[7] We agree with Amici Curiae that the interpretation placed on "decision or order" by the supreme court in Delta is very limited. The author of this panel was the trial judge in Delta and noted at the time of ruling therein that this interpretation would severely restrict appellate review of administrative agency decisions, reluctantly agreeing to follow the clear meaning of the legislature in 49:951(1) and 49:951(3).
[8] It would also result in an unwarranted intrusion of the state courts into the internal affairs of the executive branch of government, a position usually reserved to federal courts.
[9] This court is aware of the recent opinion by another panel of this circuit In The Matter of Recovery I, 622 So.2d 272, wherein the court followed the same reasoning used in Marine Shale in interpreting the phrase "final decision or order." Again, the court focused on the word "final" rather than the phrase "decision or order" and came to the conclusion that the settlement agreement was "akin to a final judgment." (Emphasis added). DEQ has had the opportunity to raise the issue of the definition of "final decision or order" in three cases. First, in Marine Shale, next in this case, and finally In The Matter of Recovery I. Its fourth opportunity is on rehearing in this case. Perhaps DEQ will now understand that the true meaning of the Delta Bank case is focused on the definition of "decision or order" and not the interpretation of when such decision is final. For some unknown reason, the DEQ has never raised the issue of Delta Bank's interpretation of "decision or order" or cited that case as authority in any of these three appeals, even though it has three times made the general contention that this court lacks jurisdiction.
[10] Carline, in an attempt to circumvent its failure to meet both of the tests of Delta Bank for appeal, focuses on a portion of Rule 5.0 which reads, "Any person possessing a real interest that might be adversely affected by the action of ... [DEQ] may petition ... [DEQ], in writing, to hold an adjudicative hearing." Although Carline may have standing in regard to this type of discretionary hearing, the problem is that the hearing in question for T.T. Barge was not an enforcement proceeding or an application for hazardous waste disposal facility or a proceeding in which a permit or a license was to be revoked. Rule 5.0 simply does not cover a mandatory hearing where a license is to be granted. Additionally, a main reason for denying the hearing by the secretary was that Carline had misdirected its request for a hearing to the wrong branch of DEQ.