O’NIELL, Chief Justice.
 

 Mrs. Emma Pecot Martel bought from a corporation named A. Veeder Company, Inc., on July 6, 1928, one thirty-second (1/32) interest in the mineral rights in a tract of land having an area of 202 acres and known as Amanda Plantation. The property belonged to the A. Veeder Company and had no lease on it. It was declared in the deed that the interest sold was a royalty interest, and, “to be more explicit”, that what Mrs. Martel bought was one-fourth of the one-eighth royalty that the A. Veeder Company might obtain from any lease of the land by the company for oil, gas or other minerals, and that if a lease should be made for a royalty different from one-eighth, as to gas, sulphur or other minerals, Mrs. Martel should receive one-fourth of such royalty. It was stipulated also that the A. Veeder Company reserved the exclusive right to lease the -land for the production of oil, gas or other minerals, and that any cash bonus obtained for any such lease would belong exclusively to the company.
 

 On the 17th of July, 1932, the A. Veeder Company and George T. Veeder and eight individuals who were the heirs of John W. Veeder leased 1,336.29 acres,of land, including Amanda Plantation, in one act of lease, to Roy B. Siler, for the production of oil, gas and other minerals. Siler transferred the lease to John R. Black and A. T. Schwensen; they transferred it to Mike Hogg and his associates; and they in turn transferred it to the Pan-American Production Company.
 

 
 *214
 
 The land was described in the lease as consisting of twelve tracts, having a total area of 1,336.29 acres, without any designation of the ownership of any particular tract. Some but not all of the tracts were contiguous. On January 17, 1935, a supplemental agreement was signed by all of the lessors and by Black and Schwensen, who then owned the lease, in which agreement the parties redescribed the 1,336.29 acres of land thus: The tracts described in the original lease as the 1st, 2d, 3d, 9th, 10th, 11th and 12th tract were redescribed as the 1st, 2d, 3d, 4th, 5th, 6th, 7th, 8th, 12th, 13th, 14th and 15th tract, and were recognized to be the property of the A. Veeder Company. The 3rd tract was Amanda Plantation. The tract described as the 4th tract in the original lease was redescribed as the 9th and 10th tract, the 9th tract being recognized as the property of George T. Veeder and the 10th tract as the property of the eight heirs of John W. Veeder,one of whom is George T. Veeder. The tract described in the original lease as the 5th, 6th, 7th and 8th tract was redescribed as the 11th tract, having an area of 420.31 acres. The north half of this tract was recognized as the property of George T. Veeder, and the south half as the property of the eight heirs of John W.- Veeder. It was recognized that one of the eight heirs owned 7/28 and each of the others 3/28 interest in the 10th tract and in the south half of the 11th tract. It was declared in this supplemental agreement that, inasmuch as there was a complaint that the original lease was indefinite with regard to the right of the lessee to make an assignment of the-lease, therefore it was agreed that John R. Black and A. T. Schwensen, who then owned the lease, might assign .it either in whole or in part, and that a default on the part of any holder of any part of the lease would not affect the rights of any holder of any other part of it. It was stipulated also in this supplemental agreement that any rentals to be paid for a delay in drilling operations should be paid to the joint account of the lessors, regardless of their respective interests in the property, and that such payment should be accepted as' payment to each of the lessors. It was stipulated further in this supplemental agreement that any royalties that might become due to the lessors should be paid to them separately, according to the recorded ownership of each tract of land described in the lease; and, for that purpose, it was acknowledged that the A. Veeder Company owned the land described as 1st, 2nd, 3rd, 4th, 5th, 6th, 7th, 8th, 12th, 13th, 14th and 15th tract; that George T. Veeder owned the 9th tract and the north half of the 11th tract; and that the eight heirs of John W. Veeder, named in the supplemental agreement, owned the 10th tract and the south half of the 11th tract,— Mrs. A. Veeder having 7/28 interest and each of the seven other heirs having 3/28 interest.
 

 On the 6th of February, 1936, Mrs. Martel sold to David M. Picton, Jr., one-half of her royalty interest, described as one sixty-fourth (1/64) of any. oil, gas or other minerals, except sulphur, that might be produced from the 202 acres of land called Amanda Plantation, and 6% cents
 
 *215
 
 •per long ton on any sulphur that might be produced from the land.
 

 On May 18, 1937, the Pan-American Production Company, as assignee of the Siler lease, began drilling for oil on the tract described in the original lease as the 8th tract; but the well was abandoned finally as a dry hole. The Pan-American Production Company then commenced drilling on the land described in the original lease as the 6th tract, and completed five producing oil wells, one on December 31, 1937, another on March 9, another on April 20, another on May 4, and another on May 3, 1938. On May 9, 1938, the company completed a producing oil well on the tract described in the original lease as the 7th tract. As we have pointed out already, the four tracts numbered 5th, 6th, 7th and 8th in the original lease, form the 11th tract in the supplemental agreement. This tract has an area of 420.31 acres, and the north half of it belongs to George T. Veeder and the south half to the heirs of John W. Veeder. No part of this tract "belongs to the A. Veeder Company, although it appears that it adjoins Amanda Plantation. No drilling operations were •ever conducted on Amanda Plantation, in which Mrs. Martel bought the royalty interest. At the time of the trial of this suit the Pan-American Production Company had produced 195,516.03 barrels of oil, having a net value of $168,624.57, after •deduction of the severance tax; all of which oil was produced from the 11th tract, the north half of which belongs to George T. Veeder and the south half to the heirs of John W. Veeder.
 

 In this suit Mrs. Martel is suing the A. Veeder Company, Inc.‘, and George T. Veeder and the heirs of John W. Veeder and the Pan-American Production Company for a share of all of the oil produced and to be produced — and for a share of all other minerals that may be produced — from any and all parts of the 1,336.29 acres of land embraced in the Siler lease. She contends that the lease is a joint lease, and therefore that her one sixty-fourth (1/64) royalty interest in the mineral rights in the 202 acres comprising Amanda Plantation entitles her to one sixty-fourth (1/64) of the fraction 202/1336.29 of all of the oil that has been or may be produced from any part of the 1,336.29 acres of land under the lease, and entitles her to the same proportion of any other minerals that may be produced hereafter from any part of the 1,336.29 acres of land under the Siler lease. The plaintiff is claiming also $277.75, which sum she avers bears the same ratio to the total sum which was paid as delay rentals, during the period of five years, which 202 (the number of acres in Amanda Plantation) bears to 1,-336.29 (the total number of acres leased).
 

 One of the defendants, Mrs. A. Veeder, who was one of the heirs of John W. Veeder, died before the suit came to trial, and her heirs, who are also the heirs of John W. Veeder, were cited to answer and did answer as the heirs of Mrs. A. Veeder.
 

 All of the Veeders and the A. Veeder Company answered that the Siler lease was not a joint lease, and they therefore denied that Mrs. Martel ever acquired any mineral rights in any land other than the 202 acres comprising Amanda Plantation. They
 
 *216
 
 pleaded also that Mrs. Martel was estopped to claim that the lease was a joint lease, by a written acknowledgment dated December 20, 1934, and also by her acknowledgments made in the sale of half of her mineral rights to David M. Picton, Jr., on February 6, 1936. The Pan-American Production Company also denied that Mrs. Martel was entitled to share in the delay rentals that had been paid to the lessors, and denied that she was entitled to share in the royalties on the oil produced from lands other than Amanda Plantation. The A. Veeder Company pleaded also that Mrs. Martel’s mineral rights on Amanda Plantation had lapsed and become extinguished by the prescription of ten years. The company, therefore, set up a reconventional demand for a judgment declaring that the mineral rights which Mrs. Martel had acquired on July 6, 1928, had lapsed and become extinguished by the prescription of ten years. The judge .gave judgment accordingly, decreeing that the mineral rights which the plaintiff had acquired had become extinguished by the prescription of ten years, and rejecting her demand. She is appealing from the decision.
 

 Our opinion is that Mrs. Martel did not acquire by virtue of her deed from the A. Veeder Company, Inc., dated July 6, 1928, in connection with the lease to Roy B. Siler dated July 17, 1932, any mineral rights in any land other than the 202 acres comprising Amanda Plantation. Mrs. Martel was not a party to the lease and is not concerned with the question whether it is or is not a joint lease. The lessors, therefore, did not need the consent of Mrs. Martel to make the stipulation with the lessee that the-royalty to be paid on the oil, gas or other minerals that might be produced from any one of the several tracts of land described in the lease should be paid only to the owner or owners of the tract from which the oil, gas or other mineral was produced. That stipulation was not made — specifically if at all — in the original contract of lease; but the failure to make the stipulation in the original contract did not prevent the contracting parties from making the stipulation afterwards, as they did in the supplemental agreement dated January 17, 1935. There is no doubt or disputé that in this supplemental agreement the lessors and the lessee agreed that any royalty that might become due for oil, gas or other minerals that might be produced from any one of the several tracts described in the lease should belong only to the owner or owners of the tract from which the oil, gas or other minerals would be produced. That understanding was verified by the declaration in the instrument that it was “for the purpose of royalty payments which may [might] accrue” that the separate ownership of each one of the fifteen tracts was recognized and stated specifically. That agreement, for the payment or distribution of any royalties that might accrue under the lease, was made two years and five months before operations for drilling were commenced on any part of the leased lands; hence in that respect the agreement was fair to all parties concerned. The lessee was at liberty to commence drilling on any tract on which the lessee saw fit to commence. If the lessee had chosen, to drill a well on the 202 acres comprising Amanda Plantation, and if the well or wells
 
 *217
 
 had produced oil or gas in paying quantities, Mrs. Martel would have received — not merely 202/1336.29 of 1/64 of the oil or gas —but all of the 1/64 of the oil or gas produced from the 202 acres of land. Surely, the A. Veeder Company, after selling to Mrs. Martel the 1/32 of the mineral rights in the 202 acres of land comprising Amanda Plantation, could not reduce or affect her mineral rights in the 202 acres of land by entering into a contract with other parties. By the same token, the rights of these other parties, in the minerals in their lands, could not be reduced for the advantage of Mrs. Martel, without the consent of these other parties.
 

 Of the two instruments on which the defendants rely to support their pleas of estoppel, the first instrument was signed by Mrs. Martel on December 20, 1934, — which was after the Siler lease was granted by the A. Veeder Company but before drilling operations were commenced. The purpose of the instrument was declared in it to be “to finally and completely set at rest” the question whether Mrs. Martel was entitled to a share of the delay rentals paid or to be paid under.the Siler lease; and, for that purpose, Mrs. Martel did declare and acknowledge that she was not entitled to any part of the delay rentals theretofore paid or thereafter to be paid under the terms of the Siler lease, or of any other lease that might be granted thereafter by the A. Veeder Company, Inc., on the 202 acres of land comprising Amanda Plantation. Mrs. Martel declared that she ratified and confirmed the Siler lease, with the understanding that one thirty-second (1/32) royalty interest in any oil, gas or other minerals that might be produced from the 202 acres of land comprising Amanda Plantation under the Siler lease or under any future lease should belong to her. It was declared in this instrument that the question as to whether Mrs. Martel was entitled to any part of the delay rentals paid or to be paid to A. Veeder Company, Inc., under the Siler lease, “has now been raised by third parties”. From this it seems that Mrs. Martel’s declaration of her intention ‘ “to finally and completely set. at rest the said question hereinabove referred to” was made for the benefit or protection of the third parties who were sufficiently interested to raise that question. And in that connection Mrs. Martel declared in the instrument. that she had theretofore recognized that she was not entitled to any part of the delay rentals paid or to be paid under the Siler lease. It is argued for the plaintiff that these declarations and acknowledgments on the part of Mrs. Martel did not constitute an estoppel because no one acted upon them or was misled by them. Conceding, for the sake of argument, that these declarations and acknowledgments made by Mrs. Martel are not enough in themselves to support a technical plea of estoppel, they are convincing proof of Mrs. Martel’s understanding of the Siler lease before oil was discovered on any part of the land embraced in the lease.
 

 The other instrument relied upon by the, defendants to support their plea of estoppel is the deed by which Mrs. Martel sold to David M. Picton, Jr., one sixty-fourth (1/64) of the mineral rights in the 202 acres of land comprising Amanda Planta
 
 *218
 
 tion. In' this deed Mrs. Martel declared that she had acquired the one thirty-second (1/32) interest in the mineral rights in the 202 acres of land by the deed from the A. Veeder Company, Inc., dated July 6, 1928, and that she was selling to Picton one sixty-fourth (1/64) of the mineral rights in that tract, — except that as to sulphur she sold á royalty interest of 6J4 cents per long ton. In the deed to Picton the mineral rights sold were declared to be a “royalty interest”. It was declared that the sale was made subject to the Siler lease, and that the one sixty-fourth (1/64) royalty should be paid to Picton out of the royalty reserved by the lessor in that lease. In the deed to Picton, therefore, Mrs. Martel acknowledged that under the Siler lease she was entitled to one thirty-second (1/32) royalty interest in the mineral rights in the 202 acres of land comprising Amanda Plantation; which was virtually an acknowledgment that she was not entitled to only 202/1336.29 of 1/32 royalty interest in all of the 1,336.29 acres of land embraced in the Siler lease. Mrs. Martel could not have sold to Picton a mineral interest, or royalty interest, as great as one sixty-fourth (1/64) interest in the mineral rights in the 202 acres of land comprising Amanda Plantation if she had owned only 202/1336.29 of 1/32 interest in that tract,— with a corresponding interest in the mineral rights in all of the other tracts described in the Siler lease. The deed from Mrs. Martel to Picton, therefore, shows that her understanding of her deed from the A. Veeder Company, and of the Siler lease, was- that her mineral rights or royalty interest did not extend beyond the 202 acres, comprising Amanda Plantation. A case in which a similar acknowledgment was construed by this court was the case of United Gas Public Service Co. v. Eaton et al., decided by the Court of Appeal for the Second Circuit, 153 So. 702, and analyzed by this court in the opinion rendered in Shell Petroleum Corporation v. Calcasieu Real Estate & Oil Co., 185 La. 751, 765-768, 170 So. 785, 789, 790. In that case Eaton owned 40 acres of land forming the east half, and a man named Emmons owned the 40 acres forming the west half, of the 80 acres forming the S% of a regular quarter-section in place. A man named Young owned half of the mineral rights in the 80 acres; hence Eaton owned only half of the mineral rights in his 40 acres, and Emmons owned only half of the mineral rights in his 40 acres. Eaton and Emmons and Young together granted a lease on the 80 acres of land for the production of oil and gas, and the lessee brought in a producing gas well on the 40-acre tract belonging to Eaton. The question in the suit was whether Emmons was entitled to share in the royalty from the gas well on Eaton’s 40 acres. It was not disputed that Young was entitled to half of the royalty because his half interest in the mineral rights extended over the whole 80 acres. Emmons had sold a fractional part — reserving only one-fourth — of the mineral rights or royalty on his 40 acres, and Eaton had sold a fractional part of his remaining mineral rights or royalty on his 40 acres, after they and Young had made the lease of the 80 acres; and the recitals in these subsequent
 
 *219
 
 sales were taken by the court of appeal and by this court as acknowledgments by Emmons and Eaton that neither of them had any mineral rights or royalty interest in the land of the other. Referring to the decision rendered by the court of appeal, this court said:
 

 “The ruling was that Emmons and his transferees had no interest whatever in the royalty, or mineral rights on Eaton’s 40 acres, because Emmons and his transferees had construed their contract [of lease] .to mean exactly that. Emmons and Eaton each sold off parts of their mineral rights, or interest in the royalty, after they and Young had entered into the lease; and, in each instance, Emmons sold the mineral rights, or interest in the royalty, only on his 40 acres; and in each instance where Eaton sold a part of his royalty or mineral rights he described only his 40 acres of land. * * * Certainly the transferees from Emmons, by buying a share in the mineral rights in his 40 acres only, did not acquire any mineral rights in Eaton’s 40 acres. And, by the same token, Emmons, by claiming to reserve a fourth interest in the mineral rights on his own 40 acres only, virtually disclaimed any interest in the mineral rights in Eaton’s 40 acres. One of the rules for the interpretation of contracts, prescribed in article 1956 of the Civil Code, is that, when the intent of the parties is doubtful, the construction put upon the contract by the way in which it has been executed or dealt with by the parties themselves or by one of them with the assent of the other, ‘furnishes a rule for its interpretation.’ ”
 

 Referring now to the reconventional demand of the A. Veeder Company, Inc., to have Mrs. Martel’s mineral rights or royalty interest in Amanda Plantation declared extinguished by the prescription of ten years, the defense which Mrs. Martel sets up in opposition to this plea is that the A. Veeder Company reserved the exclusive ' right to grant leases for the production of oil, gas or other minerals on Amanda Plantation. It is argued for Mrs. Martel that the Siler lease, which embraces the 202 acres comprising Amanda Plantation, in the 1,336.29 acres embraced in the lease, is still in full force and effect, and that Mrs. Martel’s royalty' interest in the lease on Amanda Plantation cannot lapse by effect of the prescription of ten years so long as the lease on the plantation remains in effect. Since we have decided that Mrs. Martel’s mineral rights or royalty interest never has extended beyond the 202 acres comprising Amanda Plantation, and since Mrs. Martel is not concerned with the question whether the Siler lease is a joint lease in the sense that the lessee may keep the lease in effect on all of the leased tracts by drilling on any one of them, we do not express an opinion on that question. Assuming for the sake of argument that the lease is yet in effect on Amanda Plantation, notwithstanding there has been no drilling on that tract, the fact that no drilling was done on Amanda Plantation within the ten years following the date on which Mrs. Martel acquired her mineral rights, July 6, 1928, has caused her mineral rights to lapse and be extinguished. It is well settled that, in a sale by
 
 *220
 
 a landowner of a part of his mineral rights in the i land, his reserving the exclusive right to lease the land for the production of oil, gas and other minerals does not prevent the extinguishment of such mineral rights by the prescription of ten years. Vincent v. Bullock, 192 La. 1, 187 So. 35; Hightower v. Maritzky, 194 La. 998, 195 So. 518, 520. To characterize such mineral rights as a royalty interest, in a sale or reservation of them, does not make them anything more than a real right, which is subject to the prescription of ten years. Vincent v. Bullock, supra. Article 792 of the Civil Code provides that the prescription of ten years for nonuse of a servitude does not run if the use of the servitude is prevented by an obstacle which cannot- be prevented or removed by the party entitled to the servitude; but, so far as that article is applicable to a real right — in the nature of a personal servitude — it is not applicable to an obstacle or a hindrance consented to or stipulated in the deed in which the real right is granted or reserved. In that connection, in Hightower v. Maritzky, the court gave this explanation:
 

 “The parties to a contract granting a servitude or real right may impose any restriction or limitation that they see fit to impose upon the use or enjoyment of the servitude or the exercise of the right,— except that they cannot stipulate effectually that the servitude or real right shall not be subject to the prescription of ten years, liberandi causa. The reason for that exception to the freedom of contract is in the fundamental rule of public policy that a debtor, or an obligor in the case of a servitude or real right, cannot renounce in advance the benefit of the prescription which may release him or his land from the obligation. Rev.Civ.Code, arts. 3459, 3460, 3549; Nabors Oil & Gas Co. v. Louisiana Oil Refining Co., on rehearing, 151 La. 361, 91 So. 765; Bodcaw Lumber Co. v. Magnolia Petroleum Co., 167 La. 847, 120 So. 389.”
 

 Mrs. Martel’s- mineral rights in Amanda Plantation had not become extinguished by the prescription of ten years at the time when this suit was filed. It was filed on the last day of the tenth year following the date on which she bought the mineral rights, July 6, 1928. If the filing of the suit could have had the effect of saving Mrs. Martel’s mineral rights on Amanda Plantation from being lost by the prescription of ten years, the suit would have been filed in time to have that effect, because, according to article 3467 of the Civil Code, prescription takes effect only “after the last day allowed by law has elapsed”. But the mere filing of a suit for the enforcement or recognition of a real right does not have the effect of interrupting the prescription of ten years; and it is not contended by the attorneys for Mrs. Martel that the filing of this suit did have that effect. The rejection of Mrs. Martel’s demand for a share of the delay rentals that were paid to the A. Veeder Company previous to the filing of this suit is founded upon her written acknowledgment that she was not entitled to any part of the delay rentals. And the rejection of her demand for a share of the oil that was produced before the suit was filed is founded upon
 
 *221
 
 her interpretation of her rights under the Siler lease, in connection with her deed for a thirty-second (1/32) of the mineral rights in Amanda Plantation.
 

 The judgment is affirmed.