# Nathan (Nat) Minchen v. R. L. Fields Et Al

No. A-7720. Decided January 11, 1961
Rehearing overruled April 12, 1961
(345 S. W. 2d Series 282)

*W. A. Robertson,* Houston, for petitioner Minchen.

*Cooper K. Ragan* and *John L. Russell,* Houston, for petitioners Mrs. Hogan and Jay Bertrand.

*Perkins & Vollentine,* Gonzales, Wm. A. Cline, Wharton for respondents R. L. Fields, and another.

*Nicholson, Foreman & Hendrix, Wm. E. Henderson,* Houston, for respondent Sohio Petroleum Co.

*Knight & Knight,* Houston, for respondents Flora Barnes and others.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Respondents, R. L. Fields, et al., filed suit for a declaratory judgment against petitioner and others to construe the rights of the defendants under their various muniments of title to their individual interests in and under 802.6 acres of land in Wharton County, Texas. As to petitioner, it was sought to determine whether or not he had any interest in an oil payment of $60,195.00 out of 1/32nd of 7/8ths of the oil and/or gas produced from wells located on the 802.6 acres.

The rights of all other defendants, except petitioner, have been adjudicated in the courts below and there has been no appeal to this Court from such adjudication.

Respondents were the owners of the land and the reversionary rights in the 802.6 acres, and also of certain mineral interests therein. There was only one oil and gas lease covering this land and the production therefrom and it was executed only by respondents, R. L. Fields and wife, and conveyed the 802.6 acres in three separately described tracts of land. Track No. 2 consisting of 39.30 acres is the track on which the production is located. Petitioner's ownership is in a certain 284.74 acres out of the 802.6 acres, but not including Track No. 2. At the time the lease was executed petitioner's predecessors in title owned an undivided 1/4th royalty interest in Blocks Nos. 3, 4, 5 and 6 of Missouri-Lincoln Trust Company's subdivision of the DDD Baker Survey comprising the 284.74 acres. Others owned various mineral interests in other parts of the 802.6 acres. The conveyance to petitioner's predecessor in title was dated April 2, 1935, and was for a period of twenty (20) years from its date

and as long thereafter as oil, gas, or other minerals were produced from the 284.74 acres of land in paying quantities. This conveyance reserved the executive rights in the Fields, as grantors, but gave to the grantee 1/4th of all bonus, or bonuses, which grantor should receive for any future leases, as well as the same interest in all delay rental payments under future leases only. The lease under which production was had was dated February 28, 1947, and provided for a 1/8th royalty on oil and gas, or if gas was sold at the well 1/8th of the amount realized from the sale, and 50 cents per long ton on sulphur.

The cause was tried before the trial court without a jury. The trial court rendered judgment in favor of respondents that petitioner take nothing. Various defendants appealed to the Court of Civil Appeals where the judgment of the trial court was affirmed. 330 S.W. 2d 683. Only petitioner applied for a writ of error to this Court.

■ We affirm the Court of Civil Appeals in part and reverse and render in part as hereinafter set out. Petitioner's first point is:

"The Court of Civil Appeals, while correct in holding that the oil payment provided for in the oil and gas lease constituted a bonus, erred in holding that the petitioner, Nathan Minchen, who had the right to receive a portion of the bonus as to any lease executed covering the 284.74 acres, was not entitled to receive his proportionate share of such bonus oil payment by virtue of production from such tract of 802.6 acres."

We sustain this point. The provision for the oil payment contained in the lease is "as a further consideration for this lease, lessor is to receive Sixty Thousand One Hundred Ninety-Five Dollars ($60,195.00) out of 1/32nd and 7/8th of the oil and/or gas and other minerals, if, as and when produced, saved and sold." The Court of Civil Appeals correctly held this oil payment was a part of the bonus paid apart from and above the usual royalty.

In the case of State Nat. Bank of Corpus Christi v. Morgan, 135 Texas 509, 143 S.W. 2d 757 (1940), the Bank had sold the land covered by the lease, but in its deed to such land had reserved and excepted from the conveyance "an undivided 1/2 interest in and to all of the royalty in oil, gas, casinghead gas

* * *." The executive rights were given to the grantee in the deed, and grantor "does not by this reservation and exception retain any right of participating * * * in the bonus or bonuses which shall be received from any future lease * * *." The lease executed provided for a $48,000 oil payment out of 1/8th of 7/8ths of the oil, gas and other minerals, free of cost of production, marketing or handling. The Court, after discussing various cases and Summers' Oil & Gas, Permanent Edition, Vol. 3, holds that the "* * * oil payment is bonus within the terms of the several definitions last discussed, for it is an additional consideration for the lease apart from or above the usual royalty." Also see Griffith v. Taylor, 156 Texas 1, 291 S.W. 2nd 673 (1956), which follows the same definition of "bonus" and "royalty."

All parties agree that the interest which petitioner has in the 284.74 acres included in the 802.6 acres is 67.98 mineral acres. A calculation shows that the oil payment is at the rate of $75.00 per acre for the total acreage of 802.6 acres. Petitioner would therefore be entitled to receive $5,098.50 (67.98 acres x $75.00) out of the total oil payment out of 1/32nd of 7/8ths of the oil and/or gas and other minerals, if, as and when produced, saved and sold from the 802.6 acres. The oil payment is "further consideration" for the lease on the total acreage without any provision favoring one part of the 802.6 acres above any other part. To follow the holding of the Court of Civil Appeals would lead to one of two results, both of which are contrary to the provisions of the lease. First, only those owning acreage from which production was had would receive the total oil payment. In such event, those owning acreage developed later might not receive any oil payment. Secondly, should the production be only from a certain specified acreage, and the oil payment confined to $75.00 per acre for such acreage, then lessee would be relieved from a part of the consideration he agreed to pay for the lease on the whole of the 802.6 acres. Under our holding, all owners of mineral interests in the 802.6 acres would share in proportion to the mineral acres owned by them.

■ By his second point petitioner contends that the Court of Civil Appeals erred in not holding that the execution of the oil and gas lease by Fields and wife constituted a unitization or pooling of all the mineral interest under the 802.6 acres, and all owners of mineral interests share in the production from any part of the 802.6 acres in proportion to their ownership. We agree with the Court of Civil Appeals that the act of Fields in executing one lease covering the 802.6 acres did not unitize or

pool all of the mineral interests in said land. Brown v. Smith, 141 Texas 425, 175 S.W. 2d 43, (1943) ; Nugent v. Freeman, 1957, Texas Civ., 306 S.W. 2d 167, wr. ref., n.r.e. As said by the Court of Civil Appeals, "the reason of the rule is that where mere executive rights are conferred or reserved, there is no intention evidenced to vest authority to convey a royalty interest reserved or the royalty interest attributable to the minerals leased and to hold that such holder can unitize or pool the interest would allow him to convey such royalty interest because a unitization of the royalty and minerals under different tracts effects a cross-conveyance to the owners of minerals under the various tracts of royalty or minerals so that they all own undivided interests under the unitized tract in the proportion their contribution bears to the unitized tract. Veal v. Thomason, 138 Texas, 341, 159 S.W. 2d 472." (330 S.W. 2d 687). We overrule petitioner's second point.

Petitioner, in his third, fourth and fifth points, complains of the holding of the Court of Civil Appeals that petitioner did not ratify the Fields' lease thus unitizing and pooling his mineral interest and thus entitling petitioner to share in the production from any part of the 802.6 acres. Petitioner also claims there is no evidence to support the finding of the trial court that he had not ratified the lease. We overrule these points and agree with the holding of the Court of Civil Appeals. That Court has set out, in its opinion, the evidence material to these points, and we shall not lengthen this opinion by repeating the facts on which petitioner bases his contention. It is sufficient to say that these facts do not show a ratification of the Fields' lease as a matter of law.

In so far as the Court of Civil Appeals denied petitioner a recovery of any part of the oil payment, its judgment is reversed, and judgment here rendered that petitioner have and recover $5,098.50 of the oil payment, if, as, and when produced, saved and sold.

As to all other points the judgment of the Court of Civil Appeals is in all things affirmed.

The costs of this cause are divided equally between petitioner and respondents.

Associate Justice Steakley not sitting.

## ON MOTION FOR REHEARING

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Respondents attack our holding that petitioner is entitled to receive .955 of 1/4th of the oil payment covering the 284.74 acres, or 67.98 mineral acres. As pointed out by us in our original opinion, the deed under which Minchen claims his rights specifically provides that the grantee shall receive 1/4th of all bonus, or bonuses, which grantors shall receive for any future leases. The amount of the bonus on the entire 802.6 acres was $60,195.00, which figures out $75.00 per mineral acre. Minchen, who owned 67.98 acres for bonus purposes, would be entitled to receive $5,098.50, as set forth in our original opinion. Further, on the trial of this cause a stipulation was entered into between the parties showing that Minchen was paid .955 of 1/4th of the cash bonus covering the 284.74 acres received by the lessors from the lessees. Such stipulation also show—in a letter written to the Fields—that the lessee so construed Minchen's rights under the deed conveying the mineral interests to Phillips, Minchen's predecessor in title, and that the Fields recognized this construction by paying Minchen his part of the cash bonus. The ownership of the production payment was stipulated as follows: R. L. Fields et ux, 1/3 thereof; Flora Barnes, 1/3 thereof; and R. E. Fields 1/3 thereof. The trial court's judgment awards the production payment in the same proportion.

Minchen's mineral interest was derived through B. Wendell Phillips. The relevant portion of Phillips' mineral deed is as follows:

"This grant shall run, and the rights, titles and privileges hereby granted shall extend to Grantee herein, and to Grantee's heirs, administrators, executors a n d assigns, for a period of twenty (20) years from date hereof (4/3/35) and as long thereafter as oil, gas or other minerals, or either of them is produced or mined from the lands described herein, in paying or commercial quantities. If at the expiration of said twenty (20) years from date hereof, oil, gas or other minerals, or either of them, is not being produced or mined from said land or any portion thereof in paying or commercial quantities, this contract shall be null and void and the Grantee's rights hereunder shall terminate."

■ Respondents also contend that Minchen's rights to any bonus

were cut off on April 3, 1955, the date his 20-year term ended. The stipulation between the parties to the suit (Plaintiffs' Exhibit 13) shows that the first production from the wells on the 802.6 acres was on December 18, 1948, and that production from the lease was being had up through the date of the trial on June 11, 1956. The provision contained in the lease regarding the oil payment was for $60,195.00 out of 1/32nd of 7/8th of the oil and/or gas and other minerals, *if, as and when produced, saved and sold.* Clearly this would give Minchen a right in the production only during the life of the term of his mineral interest. It is the holding of the courts of our state that a provision to pay a certain sum of money out of oil or a fractional part of the oil or its proceeds, produced from a given lease is conditional upon actual production from such lease. Sheppard v. Stanolind Oil & Gas Co., Tex. Civ. App., 1939, 125 S.W. 2d 643, wr. ref.; Harris v. Wheeler, Com. App., 267 S.W. 465; Ferris v. Huffman, Com. App., 274 S.W. 125. As stated in Ferguson v. Mansfield, 114 Texas 112, 263 S.W. 894, 900, "it is quite elementary that an instrument payable upon a condition which does not import an absolute liability is not payable until that condition has happened. * * *"

And further from Sheppard v. Stanolind Oil & Gas Co., supra:

"The sole purpose of a mineral lease is to develop the property in order to produce the minerals, and where the consideration, in whole or in part, moving to the lessor is a sum stated payable out of production or a part thereof, the obligation thereby created is contingent upon the fact and extent of production. Of course, language might be employed in a particular instrument which would import an unconditional obligation to pay, as was the case in Bell v. Kirby P. Co., Tex. Civ. App., 269 S.W. 170."

In discussing whether an oil payment was taxable to the payee, the court further said [(4-7), p. 647]:

"* * * Consequently everything paid or contracted, whether in money or in oil or its proceeds, as distinguished from delay rentals, constitutes a part of the purchase price for the lease. In this particular the 'oil bonus' (the term usually applied to the sums under consideration) stands upon the same footing as the cash bonus. But here the analogy between the oil bonus and money bonus (whether cash

or deferred) ends. Royalty also is on the same footing as bonus, cash, deferred, or oil, as regards representing a part of the purchase price for the lease. And this is true for another reason: Oil in place is a part of the land. It constitutes real estate. When it is severed from the soil, the land itself is taken (wasted) to that extent, and the corpus of the estate in the land is to that extent depleted. * * *"

Again, (6. 649), in discussing the cases of Sheffield v. Hogg, and Federal Royalty Co. v. State, 124 Texas 290, 77 S.W. 2d 1021, 80 S.W. 2d 741, the court says: " * * * We have been unable to peruse the opinion, holding in mind the facts of the instant case, without concluding that the interest here involved, by whatever name it may properly be called, is an interest in real estate, an interest in production under the leases, and such an interest as imposes upon its owner the burden of the production tax under the statute we are considering. * * *" See also Tennant v. Dunn, 130 Tex 285, 110 S.W. 2d 53 (1937) ; State v. Quintana Petroleum Co., et al, 134 Texas 179, 133 S.W. 2d 112, 128 A.L.R. 843, rehearing denied, 134 Texas 179, 134 S.W. 2d 1016; 128 A.L.R. 850. Greene v. Robison, 117 Texas 516, 533, 8 S.W. 2d 655; Lemar v. Garner, 121 Tex. 502, 512, 513; 50 S.W. 2d 769, 773.

It is further established by the case of Sheppard v. Stanolind Oil & Gas Co., supra, that "anything which the lessor receives, in whatever form, in consideration for the oil taken or to be taken from the land, constitutes a part of the purchase price of the title to the oil, and therefore of the land," citing State ex rel Moody v. Hatcher, 115 Texas 332, 281 S.W. 192; Andrews v. Brown, Tex. Civ. App., 283 S.W. 288, affirmed 10 S.W. 2d 707.

Professor A. W. Walker, in an article *Oil Payments*, 20 Tex. Law Rev. 259, discusses the various cases in Texas on the question of whether or not an oil payment is an interest in land and sums up the matter by saying that, "The decisions in Tennant v. Dunn and State v. Quintana Petroleum Co. seem to have settled the law in Texas to the effect that an oil payment of the ordinary type which undertakes either to reserve or to grant a title to a fractional share of the oil or of the leasehold estate, or which provides for a delivery of this share of the production in kind to the payee, creates a present interest in land in the payee." And further (p. 263), "actually this language [as, if and when produced] is used in oil payment clauses for the pur-

pose of fixing the time of payment and in order to make it clear that payment is only to be made out of production, and its use does not indicate an intention by the parties that no present interest in the oil in place shall be vested in the payee."

All of Minchen's interest in the minerals were received under a deed expressly limiting these rights to a term of 20 years from April 3, 1935. These rights expired April 2, 1955, and among those rights expiring was the right to receive a part of the oil payment set forth in the lease. So long as his interest was valid and binding he was entitled to his share of the production until that share amounted to $5,098.50. If his 67.98 acres interest in 1/32nd of 7/8ths of the production from the 802.6 acres equaled the amount of $5,098.50 prior to April 3, 1955, Minchen should recover judgment for such amount. We are unable to accurately determine from the record before us just how much Minchen's share of the production would be up to and including April 3, 1955. We therefore modify our former opinion only to the extent that this cause is remanded to the trial court for the purpose of rendition of a judgment for Minchen for his 67.98 acres interest in 1/32nd of 7/8ths of the production from the 802.6 acres up to and including April 3, 1955, but in no event to exceed the sum of $5,098.50.

■ Mrs. Flora Barnes contends that Minchen's rights are governed by the requirements of the Statute of Frauds and must be evidenced by written instruments. That is correct. Minchen's rights are by virtue of the written deed to Phillips and the ensuing written assignments to Minchen, plus the written oil and gas lease executed by the Fields to Progress Petroleum, Inc., and the written assignments of that lease to the present lessee, Sohio Petroleum Company.

Respondents' motions for rehearing are granted and our former judgment is modified as herein stated; otherwise, the judgment remains unchanged.

MR. JUSTICE HAMILTON, joined by MR. JUSTICE SMITH, dissenting ON MOTION FOR REHEARING.

Associate Justice Steakley not sitting.

I am in agreement with the original majority opinion and for that reason I dissent from that portion of the opinion on Motion for Rehearing which limits the period during which the

petitioner may recover oil payments made, or to be made, pursuant to the terms of the lease contract as a "bonus" for such lease.

The lease in question was executed on February 28, 1947, between R. L. Fields and wife, Mary Frances Fields, as lessors (agents for petitioner) and Progress Petroleum, Incorporated, as lessee. Such lease, though describing three (3) contiguous tracts, covered 802.60 acres for the purpose of delay rentals and bonus payments. The last clause of this lease provided that "As a further consideration for this lease, lessor is to receive Sixty Thousand One Hundred Ninety-five Dollars ($60,195.00) out of 1/32nd of 7/8th of the oil and/or gas and other minerals, *if, as and when produced, saved and sold.*" (Emphasis added.)

The above quoted clause created a presently vested determinable incorporeal interest in land in the petitioner to the extent of the amount of his term mineral fee ownership in the acreage leased—67.98 acres interest in 1/32 of 7/8 of the production from the 802.6 acres until the production equaled the amount of $5,098.50 (Minchen's share). Petitioner's interest is an "oil payment" and it constitutes part of the total consideration paid by the lessee for the lease. Petitioner's rights to this "oil payment" arise out of the provisions of the lease contract and such "oil payment," when and if paid, comes out of the work ing interest owned by the lessee. Since the oil payment is carved out of the working interest in the lease, it is a burden on the lease so long as the lease is in effect, and the present existence of the lease is not questioned. It is to be noted, however, that the lease as to Minchen's interest did terminate at the end of the five-year primary term on February 28, 1952, because there was no ratification of the lease by Minchen. Since there was no pooling of Minchen's interest with the other lands, production on other lands covered by the lease did not extend the lease beyond its primary term as to Minchen's interest. Consequently, at the expiration of Minchen's term interest some three years later it reverted to respondent Fields free and unencumbered even as to the lease. The effect of this court's decree is to give to Fields a part of the lease consideration for which he gave up absolutely nothing.

The majority opinion on Motion for Rehearing holds that the petitioner's interest in the determinable "oil payment" ceased with the expiration of petitioner's term mineral interest on April 3, 1955. The effect of such a holding is that the oil pay-

ment is attached to the mineral interest. Since all of the usual forms of oil payments are regarded as creating incorporeal interests in land in Texas, it would seem that the payee's (petitioner's) interest in the "oil payment" is an interest in gross. There appears to be no justification for regarding it as being attached to a royalty interest, surface estate or possibility of reversion so as to pass under either of these interests without an express assignment or conveyance. 20 Texas Law Review 259, "Oil Payments," by A. W. Walker, Jr., at page 280.

The majority opinion is undoubtedly correct in its restatement of the proposition that where the language "as, if and when produced" is used in oil payment clauses, it is for the purpose of fixing the time of payment and in order to make it clear that payment is only to be made out of production. Its use does not indicate an intention by the parties that no present interest in the oil in place be vested in the payee. It is with regard to the nature of petitioner's interest and the duration thereof that the majority opinion is in error.

All of Minchen's interest in the minerals were *NOT* received under a deed expressly limiting the rights to a term of twenty (20) years from April 2, 1935. Minchen was and is a *payee* under the terms of the lease contract with Progress Petroleum, Incorporated, and under such terms he became a vested owner of an "oil payment" for his 67.98 acres interest in 1/32 of 7/8 of the production from the 802.6 acres. It is not through the provisions of the term royalty deed that Minchen acquired his rights to this oil payment now being sought. This right arose out of the lease contract, which is still in force, and which provides that the "oil payment" shall be made at any time production is realized on the 802.6 acre tract.

By the terms of the lease which was executed prior to the termination date of petitioner's term mineral interest, Minchen, as lessor-payee, became entitled to his proportionate share of the "oil payment" from the leasehold estate until the "bonus" of $60,195.00 has been paid. Under the facts of this case, petitioner's right to the "oil payment" would be destroyed only by the termination of the lease and would so hold.

I respectfully dissent.